## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF GEORGIA

In re:

EXTRUSION GROUP, LLC, *et al.*,

Debtor.

Case No.: 21-21053-JRS

Chapter 11

### NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF PAPERS

**PLEASE TAKE NOTICE** that Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (collectively, "Kimberly-Clark"), pursuant to Rules 2002, 9007, and 9010(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") enter enter an appearance in the above-captioned chapter 11 cases by and through its counsel, Gibson, Dunn & Crutcher LLP and Troutman Pepper Hamilton Sanders LLP, and request that all notices given or required to be given and all papers served in these cases be delivered to and served upon the parties identified below at the following addresses:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey C. Krause, Esq.
Michael Neumeister, Esq.
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mneumeister@gibsondunn.com

John G. Conte, Esq.
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 213.351.4035
jconte@gibsondunn.com

TROUTMAN PEPPER HAMILTON
SANDERS LLP
James A. Lamberth
Harris B. Winsberg
Nathaniel T. DeLoatch
600 Peachtree Street NE
Suite 3000
Atlanta, GA 30308
(404) 885-3000
james.lamberth@troutman.com
harris.winsberg@troutman.com
nathan.deloatch@troutman.com

**PLEASE TAKE FURTHER NOTICE** that the foregoing request includes all of the notices and papers referred to in the Bankruptcy Rules, Bankruptcy Code, and the Local Rules for the United States Bankruptcy Court for Northern District of Georgia, and also includes, without limitation, all orders and notices of any motions, applications, pleadings, statements of affairs, operating reports, schedules of assets and liabilities, complaints, demands, hearings, requests or petitions, answering or reply papers, memoranda and briefs in support of any of the foregoing and any other document brought before this Court with respect to these chapter 11 cases, whether formal or informal, written or oral, and transmitted or conveyed by mail, delivery, telephone, telegraph, telecopier, telex or otherwise.

**PLEASE TAKE FURTHER NOTICE** that neither this notice of appearance nor any later appearance, pleading, claim, or suit is intended or shall be deemed to waive (i) Kimberly-Clark's right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (ii) Kimberly-Clark's right to trial by jury; (iii) Kimberly-Clark's right to have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (iv) Kimberly-Clark's right to seek modification of the automatic stay to the extent it applies to any aspect of the action entitled *Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC v. Extrusion Group, LLC, Extrusion Services LLC, EG Global, LLC, EG Ventures, LLC, Micheal Houston and Michael Cook*, Case No. 1:18-cv-04754-SDG (the "District Court Action"), in the United States District Court for the Northern District of Georgia (the "District Court"), such as the award of damages against the debtors; (v) any other rights, claims, actions, defenses, setoffs, or recoupments to which Kimberly-Clark is or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments Kimberly-Clark expressly reserves; or (vi) Kimberly-Clark's right to object to the jurisdiction of the United States Bankruptcy Court for the Northern District of Georgia.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLEASE TAKE FURTHER NOTICE** that pursuant to instructions from the District Court in the District Court Action that each party provide by the close of business on October 8, 2021, its position as to whether the entire District Court Action should be stayed, Kimberly Clark filed the *Plaintiffs' Reply to 'Plea of Stay' and Bankruptcy Filing By Corporate Defendants*, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by this reference.  The District Court can and should determine the scope of the automatic stay, as a necessary step in determining its jurisdiction to proceed with the District Court Action, which has been pending in the District Court for almost three (3) years.  *See*, *e.g.*, *Erti v. Paine Webber Jackson & Curtis (In re Baldwin-United Corp.)*, 765 F. 2d 343, 347 (2nd Cir. 1985)("The initial issue is whether the District Court has jurisdiction to determine the applicability of the automatic stay.  We conclude that it does. . . . Whether the stay applies to the litigation otherwise within the jurisdiction of a district court . . . is an issue of law within the competence of both the court within which the litigation is pending (citations omitted) and the bankruptcy court supervising the reorganization"); *NLRB v. Edward Cooper Painting, Inc.*, 804 F. 2d 934, 939 (6th Cir. 1986)(citing *Baldwin- United* with approval); *Utica Mutual Ins. Co. v. Dean & Moore Ins., Inc.*, 2011 WL 12272690 (N.D. Ga. March 29, 2011).

Date:  October 8, 2021

Respectfully submitted,

By: */s/ Nathaniel T. DeLoatch*
James A. Lamberth
(Ga. Bar No. 431851)
Harris B. Winsberg
(Ga. Bar. No. 770892)
Nathaniel T. DeLoatch
(Ga. Bar No. 216330)
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
james.lamberth@troutman.com
harris.winsberg@troutman.com
nathan.deloatch@troutman.com

*Attorneys for Plaintiffs Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC*

# **<u>EXHIBIT A</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

KIMBERLY-CLARK CORPORATION
and KIMBERLY-CLARK GLOBAL
SALES, LLC,

            *Plaintiffs*,

     *v.*

EXTRUSION GROUP, LLC;
EXTRUSION GROUP SERVICES LLC;
EG GLOBAL, LLC;
EG VENTURES, LLC;
MICHEAL HOUSTON; and
MICHAEL COOK,

            *Defendants*.

Civil Action File No.
1:18-cv-04754-SDG

## PLAINTIFFS' REPLY TO "PLEA OF STAY" AND BANKRUPTCY FILING BY CORPORATE DEFENDANTS

## INTRODUCTION

Next week, this case observes its three-year anniversary. During those three years, Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (together, "Kimberly-Clark"), through great effort, have uncovered evidence to support the legal theories alleged in the original complaint, to wit, that Micheal Houston and Michael Cook (together, the "Individual Defendants") breached their contracts with Kimberly-Clark and misappropriated Kimberly-Clark's trade

secrets, and that all of the named defendants (collectively, the "Defendants")
infringed upon Kimberly-Clark's intellectual property to obtain a competitive
advantage. Indeed, despite Defendants' repeated efforts to obstruct and delay this
litigation, the evidence unearthed through years of discovery demonstrates that
Defendants unquestionably (1) took and used Kimberly-Clark documents to jump-
start their businesses; (2) knowingly incorporated Kimberly-Clark technology into
the equipment that Defendants offered to sell and sold; (3) shipped to China an
entire manufacturing line that embodied Kimberly-Clark's trade secrets and
patented technology; (4) formed at least one sister company for the express
purpose of selling products made using Kimberly-Clark's technology; and (5)
continue to sell and solicit sales of the infringing equipment to off-label companies
in China and elsewhere. With Summary Judgment motions due to be filed within
25 days, the Defendants will finally face a reckoning and Kimberly-Clark will
finally receive its proverbial "day in court."

## **SUMMARY OF ARGUMENT**

The Court should not allow this week's bankruptcy petitions filed only by
Extrusion Group, LLC, EG Global, LLC, Extrusion Group Services, LLC, and EG
Ventures, LLC (collectively, the "Corporate Defendants") to inject further delay
into these proceedings, while Defendants continue to infringe. Defendants

demonstrated their intent to continue their infringement in an October 7, 2021

filing in the Bankruptcy Court.  *See In re Extrusion Group, LLC, et al.,* Case No.

21-21053-JRS (Bankr. N.D. Ga. 2021), Motion of the Debtors for Entry of an

Order (A) Authorizing Debtors to Pay All Prepetition Payroll Obligations, and (B)

Directing Banks to Honor Related Transfers (Dkt. 11), a true and correct copy of

which is attached hereto as Exhibit "A".  In that filing, the Corporate Defendants

state that their principals, which include the Individual Defendants, are:

- "[F]everishly working on another startup;"

- "[H]ave received commitments for over $120 million in funding;" and

- "Once the funding is in place, the new company will place an order with
  the Debtors for millions of dollars in machinery."

*See* Exhibit "A" at 2-3.  These statements demonstrate that Defendants have no

intention of ceasing their intellectual property theft.  Through yet another

company, they are actively soliciting sales that depend on the very equipment that

incorporates Kimberly-Clark's proprietary technology.  Indeed, a Tulsa, Oklahoma

newspaper published an article just a few days ago reporting that Aero

Nonwovens, LLC, which was formed by individual defendant Michael Houston,

has proposed a 175,000 square-foot plant to manufacture baby and sanitary wipes

and that construction could begin in early 2022.  *See*, respectively, Exhibit "B"

(Tulsa World, September 29, 2021 article "Georgia company proposes manufacturing plant at Port of Muskogee") and Exhibit "C" (Aero Nonwovens, LLC Articles of Organization, dated November 14, 2019 and signed by Micheal Houston).  If allowed to proceed, the baby and sanitary wipes referenced will be made using the infringing equipment.  Defendants' latest strategy to shield these efforts through the bankruptcy filing should not be permitted.

      The *Plea of Stay* filed by the Corporate Defendants in this case asserts that "Pursuant to 11 U.S.C. § 362, this action is stayed with respect to Defendants until the conclusion of the pending bankruptcy cases."  Although unclear, the *Plea of Stay* must refer only to the Corporate Defendants, because only the Corporate Defendants filed petitions under the Bankruptcy Code, and only the Corporate Defendants are entitled to a stay under the Bankruptcy Code.  Neither of the Individual Defendants filed personal bankruptcy, so any stay arising under the Bankruptcy Code simply does not shield them.  This Court cannot condone the Individual Defendants' efforts to hide behind the Corporate Defendants and evade the Individual Defendants' responsibility for their personal misconduct.[1]  Neither

---

[1] Regardless of the corporate Defendants' financial stability, it was the acts of the individual Defendants that aggrieved Kimberly-Clark, as Messrs. Houston and Cook directly and personally breached their contracts and misappropriated

*(Cont'd on next page)*

4

the facts nor the law allow that.

Moreover, Bankruptcy Code § 362(a) does not stay Kimberly-Clark's request for prospective relief barring all Defendants from continuing to infringe Kimberly-Clark's patent or continuing to misappropriate Kimberly-Clark's trade secrets.

Accordingly, this Court can and should determine that the above-captioned litigation proceed against the Individual Defendants for all purposes, and proceed against all Defendants with respect to Kimberly-Clark's request for injunctive relief to stop their continued patent infringement and trade secret misappropriation.[2]

---

Kimberly-Clark's intellectual property.  The fact the Individual Defendants consent to a stay of the litigation against them is legally irrelevant.

[2]  This Court has concurrent jurisdiction to determine the scope of the automatic stay as a necessary step in determining this Court's own jurisdiction.  *See, e.g.*, *Erti v. Paine Webber Jackson & Curtis (In re Baldwin-United Corp.)*, 765 F. 2d 343, 347 (2nd Cir. 1985) ("The initial issue is whether the District Court has jurisdiction to determine the applicability of the automatic stay.  We conclude that it does. . . . Whether the stay applies to the litigation otherwise within the jurisdiction of a district court . . . is an issue of law within the competence of both the court within which the litigation is pending (citations omitted) and the bankruptcy court supervising the reorganization"); *NLRB v. Edward Cooper Painting, Inc.*, 804 F. 2d 934, 939 (6th Cir. 1986) (citing *Baldwin- United* with approval); *Utica Mutual Ins. Co. v. Dean & Moore Ins., Inc.*, 2011 WL 12272690 (N.D. Ga. March 29, 2011).

## SCOPE OF THE AUTOMATIC STAY

Bankruptcy Code § 362(a) bars the following:

> the . . . continuation . . . of a judicial, administrative, or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim **against the debtor** that arose before the commencement of the case under this title. . . . [Emphasis added]

On its face Section 362(a) bars only further prosecution of actions "against the debtor" that files bankruptcy. It is "well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see*, *also*, *Wedgeworth v. Fibreboard Corp.*, 706 F. 2d 541, 544 (5th Cir. 1983) ("We join those courts concluding that the protections of § 362 neither apply to co-defendants nor preclude severance"); *In re Hidden Pointe Properties, L.P.*, 343 B.R. 372, 374 (Bankr. N. D. Ga. 2005) (quoting *Teachers Ins.* passage set forth above with approval and rejecting argument that the stay protected a non-debtor defendant); *In re FPSDA I, LLC*, 2012 Bankr. LEXIS 5928, *24 (Bankr. E.D.N.Y. Dec. 26, 2012) (the automatic stay "only protects the debtor and does not extend injunctive coverage to non-debtor third parties, including equity shareholders and principals of a corporate debtor or an LLC"). The above-captioned litigation is

6

not, therefore, stayed as to any claims against the Individual Defendants, neither of whom are debtors in the Bankruptcy Cases.

Courts also have held that an action seeking to bar a debtor from future infringement of intellectual property rights is not stayed, because a bankruptcy filing does not permit or excuse ongoing infringement.  For example, the Sixth Circuit rejected the debtor defendant's argument that the automatic stay barred enforcement of injunctive relief prohibiting ongoing trademark infringement in *Dominic's Restaurant Dayton, Inc. v. Mantia*, 683 F.3d 757, 760-761 (6th Cir. 2012), holding as follows:

> The automatic bankruptcy stay "protects interests in a debtor's property, not tortious uses of that property by the debtor." *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56, 60 (D.N.J.2000) (quotation and citation omitted). The automatic stay provision "was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate, it was not intended to preclude post-petition suits to enjoin unlawful conduct. If this section were read to prevent the injunctive relief [against mark infringement] sought here, bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity." *Id.*; *see also Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("[T]he statutory stay of proceedings as to [defendant] did not free [defendant] of the contempt orders and the injunctions upon which the contempt was based, all of which were entered before [defendant] suggested bankruptcy.").

Similarly, in *Voice Systems & Services, Inc. v. VMX, Inc.*, 1992 WL 510121, at *10–11 (N.D. Okla. Nov. 5, 1992), the district court conducted the preliminary injunction hearing on patent infringement claims against the debtor after the

bankruptcy case was commenced and entered a preliminary injunction, expressly

rejecting the debtor's contention that Section 362(a) barred such relief.  The Court

concluded the debtor's financial distress - as demonstrated by the bankruptcy filing

- constituted compelling evidence that the defendant would be unable to pay

damages to compensate for the harm caused by its ongoing post-petition

infringement, which supported the request to enjoin future infringement:

> [Debtor/defendant] will be unable to compensate VMX for the damages
> that [Debtor/defendant] has caused and is continuing to cause by
> [Debtor/defendant's] infringement of VMX's patents. Therefore, VMX
> cannot be adequately compensated in damages and does not have an
> adequate remedy at law.

*Id.* at 7.  The same is true in the present case.  Indeed, yesterday's filing in

the Bankruptcy Court conclusively demonstrates Defendants' intent to

continue to misappropriate and infringe Kimberly-Clark's intellectual

property.  *See* Exhibit "A".

## CONCLUSION

The automatic stay under Bankruptcy Code § 362(a) does not bar

further litigation in this Court as against Messrs. Houston or Cook, neither of

whom filed a bankruptcy petition.  Nor does it bar this Court from enjoining

all Defendants', collectively, from continuing their ongoing patent

infringement and misuse of Kimberly-Clark's trade secrets.  As such,

Kimberly-Clark respectfully requests that the Court maintain the current case schedule, including the dispositive motion deadline of November 1, 2021.

       Kimberly-Clark reserves all rights in connection with the Bankruptcy Cases, including, without limitation, the right to seek modification of the automatic stay to the extent it applies to any aspects of this litigation, such as the award of damages against the Corporate Defendants.

Dated:  October 8, 2021

OF COUNSEL:

 /s/ *Mark Reiter*
Mark Reiter (*pro hac vice*)
Veronica Moyé (*pro hac vice*)
Philip J. Spear (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue #2100
Dallas, Texas 75201-2923
(214) 698-3360
mreiter@gibsondunn.com
vlewis@gibsondunn.com
pspear@gibsondunn.com

Robert C. Blume (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, #4200
Denver, CO 80202-2642
(303) 298-5758
rblume@gibsondunn.com

R. Scott Roe (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2618
sroe@gibsondunn.com

Respectfully submitted,

**COUNSEL FOR PLAINTIFFS**

James A. Lamberth
(Ga. Bar No. 431851)
Puja Patel Lea
(Ga. Bar No. 320796)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street,
NE Suite 3000
Atlanta, GA 30308
(404) 885-3362
james.lamberth@troutman.com
puja.lea@troutman.com

*Attorneys for Plaintiffs Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2021, I caused the foregoing PLAINTIFFS'

REPLY TO "PLEA OF STAY" AND BANKRUPTCY FILING BY CORPORATE

DEFENDANTS to be served to all counsel of record and *pro se* defendants by

electronic mail.


*/s/ Stephanie Darbo*
Stephanie Darbo

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| **In Re:** | **CASE NO. 21-21053-JRS** |
| **EXTRUSION GROUP, LLC, *et al.*,**[1] | **CHAPTER 11** |
| **Debtors.** | **[Joint Administration Requested]** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTORS TO PAY ALL PREPETITION PAYROLL OBLIGATIONS, AND (B) DIRECTING BANKS TO HONOR RELATED TRANSFERS

The above-captioned debtors (collectively, the "**Debtors**"), by this motion (the "**Motion**") and pursuant to sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seek the entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Proposed Order**"): (a) authorizing, but not directing, the Debtors to continue to honor and pay (i) all prepetition employee obligations as described more fully herein, and (b) directing all banks to honor the Debtors' prepetition transfers for payment of any of the foregoing and prohibiting banks from placing holds on, or attempting to reverse, any automatic transfers on account of the foregoing.  In support of this Motion, the Debtors respectfully state as follows:

### PROCEDURAL POSTURE

1. On October 5, 2021 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

2.      The Debtors have continued in possession of their properties and are operating and

managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and a

creditors' committee has not yet been appointed in these Chapter 11 Cases.

### JURISDICTION, VENUE, AND STATUTORY PREDICATES

4.      The United States Bankruptcy Court for the Northern District of Georgia (the

"**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding

pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the

Bankruptcy Rules, to the entry of a final order by the Court.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a),

and 541(b)(1) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

### BACKGROUND

1.      The Debtors are embroiled in a fight for survival against a massive corporation that

seeks to crush its competition with its army of lawyers, which has forced the Debtors to incur over

$7 million in legal fees defending themselves (about $3 million of which remain outstanding). The

strategy appears to be working (at least for now), given that the Debtors now find themselves in

bankruptcy court due to their massive legal bills, temporarily unable to defend themselves.

2.      However, hope is on the horizon. The Debtors' principals are feverishly working

on another startup and have received commitments for over $120 million in funding and just need

a little more to get off the ground. Once the funding is in place, the new company will place an

order with the Debtors for millions of dollars in machinery, which will enable the Debtors to afford their lawyers and emerge victorious in their legal battle.

3.    The Debtors are owned and operated by three former engineers and middle managers who, many years ago, worked for Kimberly-Clark Corporation (the "**Corporation**").[2] The Debtors' main principals left the Corporation at various times between 2006-09 and started a consulting business around that time.

4.    In 2011–2012, the Debtors' principals formed Debtor EG Global, LLC ("**EG Global**") and lead debtor Extrusion Group, LLC ("**Extrusion Group**"). They then formed debtor EG Ventures, LLC ("**EG Ventures**") the following year. EG Global is a holding company owned by the Debtors' principals, which in turn owns 100% of the membership interests in Extrusion Group and EG Ventures. Extrusion Group is the primary operating company. EG Ventures does not have significant operations. Three of the Debtors' principals formed Extrusion Group Services LLC in 2016 to provide ancillary services related to the equipment that Extrusion Group sells.

5.    Extrusion Group is an industrial machinery manufacturing and consulting company. Based on their many years of engineering experience, the Debtors' main principals have the knowledge and ability to design and oversee the manufacture of massive industrial machines that produce non-woven fabric and plastic materials used in products such as wet wipes, diapers, face masks, and more.

6.    The nature of the Debtors' businesses is such that they have a modest amount of income from consulting services and occasional multi-million-dollar influxes of cash when Extrusion Group sells a huge piece of manufacturing equipment and related components and consulting services, which has happened every few years. If it was not for their extraordinary legal

---

[2] The Debtors have a fourth principal who did not work for the Corporation and joined as their general counsel.

expenses caused by the Corporation, the Debtors' businesses would be very profitable. Since their last major sale, the Debtors' cash reserves have dwindled as they have been forced to fend off the Corporation's legal onslaught. The Debtors do not have any significant secured financing.

7. The Debtors' principals have been extremely careful not to use any proprietary intellectual property of the Corporation, using only intellectual property in the public domain and acting on advice of counsel. Nevertheless, after learning about the potential competition, the Corporation filed a 145-page complaint against the Debtors and several of their principals in October 2018 in the Northern District of Georgia, accusing them of intellectual property infringement and a slew of other purported harms. The Corporation has tried and failed twice now to shut down the Debtors with restraining orders and injunctions. This competition-destroying strategy is consistent with actions the Corporation has taken over the years against others who have gone to work for competitors, who were shown no mercy.

8. Ultimately, the Debtors are confident that they will prevail in the litigation once they are able to afford to continue paying their litigation bills and plan to survive and thrive once victory is achieved. Accordingly, they have filed these cases to obtain relief under Chapter 11, enable themselves to obtain additional funding, and reorganize.

### THE WORKERS AND PAYROLL

9. Prior to the filing of its bankruptcy petition, the Debtors incurred obligations for compensation payable to employees and independent contractors for services rendered in the ordinary course of business. The ability of the Debtors to carry on their businesses is dependent upon the confidence, loyalty, and retention of current workers. Therefore, it is critical that the Debtors be authorized to pay prepetition compensation obligations on an uninterrupted basis. Such payments will assist the Debtors in retaining competent and experienced workers.

10.     As of the Petition Date, Extrusion Group employs one full-time employee (who is leased from a professional employment organization) and one part-time independent contractor (collectively, the "**Core Workers**"), in addition to the Debtors' principals. The full-time employee works as a process engineer who provides consulting services to third parties related to processing, mechanical, and electrical engineering. The part-time independent contractor is a mechanical engineer who acts as the lead engineer for all independent contractors employed by the Debtors on various projects. The Debtors' principals have not received salaries in several months and are not requesting payment of any deferred salaries at this time.

11.     The Core Workers perform a wide variety of corporate and other job functions—including engineering, design, health and safety oversight, construction, and project management—that are critical to the Debtors' business operations and the administration of this chapter 11 case. The Core Workers are skilled personnel intimately familiar with the Debtors' processes, projects, and systems, many of which are highly technical and require unique training and experience. Without the continued, uninterrupted services of the Core Workers, the ability of the Debtors to maintain and administer their estates will be materially impaired.

12.     Additionally, the Debtors retain specialized individuals on a temporary or a project basis, including independent contractors and labor subcontractors to complete discrete projects and fulfill duties related to construction, manufacturing, and processing of materials (the "**Independent Contractors**," and collectively with the Core Workers, the "**Workers**").

13.     The Debtors ordinarily pay the Workers on a bi-weekly schedule, with the bi-weekly combined salaries and wages (the "**Salaries and Wages**") totaling approximately $8,393.05, including payroll taxes, workman's compensation policy premiums, and other withholding obligations. For the most recent pay period, the Workers were paid on October 1,

2021 for services provided from September 13, 2021 through September 26, 2021. The next payroll is due to be paid on Friday, October 15, 2021.

14.     The Debtors use Charter HR to perform all of its payroll processing, including processing all payroll taxes, withholding, workman's compensation insurance policy payments, and related reporting. For these services, the Debtors pays Charter HR approximately $140.09 per month (the "**Payroll Processing Costs**"). The Debtors have an agreement with Charter HR regarding leasing of its full-time employee, and Charter HR handles payment of all payroll and withholding taxes, as well as workers' compensation insurance.

<div align="center">

**EMPLOYEE COMPENSATION**

</div>

15.     The Debtors seek authority to: (a) pay and honor certain prepetition claims, if any, relating to, among other things, Wage Obligations (defined below), and (b) pay all costs related to or on account of employee compensation.

16.     Subject to Court approval, the Debtors intend to continue the applicable prepetition employee compensation in the ordinary course. Out of an abundance of caution, the Debtors further request confirmation of their rights to modify, change, and discontinue any of their employee compensation and benefits, and to implement new programs, policies, and benefits in the ordinary course of business on a postpetition basis in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law.

17.     In the ordinary course, the Debtors incur obligations to their Workers for base salary and wages (the "**Wage Obligations**").

18.     As of the Petition Date, the Debtors estimate that approximately $3,521.14 is owed on account of accrued but unpaid Wage Obligations (the "**Unpaid Compensation**"), which does not include deferred salaries owed to the Debtors' principals. For the avoidance of doubt, as of the

Petition Date, the Debtors do not believe that they owe Unpaid Compensation to any employee in excess of the statutory cap of $13,650 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, other than deferred principal salaries. The Debtors request authority to pay all outstanding amounts of Unpaid Compensation (except for amounts owed to principals).

## RELIEF REQUESTED

19.     By this Motion, the Debtors seeks an order pursuant to sections 105(a) and 507(a)(4) of the Bankruptcy Code authorizing the Debtors to pay or otherwise honor various employee-related prepetition obligations of the Debtors, to or for the benefit of the Workers, including the Unpaid Compensation (the "**Labor Obligations**").

20.     This bankruptcy case was filed in the midst of a regular payroll period. Accordingly, a portion of the Labor Obligations that will be payable on October 15, 2021 constitutes a prepetition debt.  Accordingly, the Debtors seek permission of the Court to pay that prepetition debt in the ordinary course of business.

21.     The Debtors also seek an order authorizing and directing all banks to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to ordinary course Labor Obligations, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

22.     For the reasons set forth herein, the Debtors respectfully submit that it is in the best interest of the estates for this Court to authorize the Debtors to make such payments and honor the Labor Obligations in the ordinary course. The Debtors submit that the amounts of salaries and wages to be paid to the Workers pursuant to this Motion are reasonable when compared with the importance and necessity of preserving services, revenues, and morale. The Debtors further submit

that the pre-petition salaries and wages paid to any individual employee will total less than $13,650.

<u>**BASIS FOR RELIEF**</u>

23. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition labor obligations in certain circumstances. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to operate the business while maintaining "a fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor-in-possession is the obligation "to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* In the instant case, the Debtors are operating as Debtors-in-possession consistent with sections 1107(a) and 1108 of the Bankruptcy Code, and payment of the Labor Obligations is necessary to protect and preserve the Business and the estates. Thus, the Court should authorize the relief requested in this Motion.

24. Consistent with the Debtors' fiduciary duties, this Court may also grant the relief requested herein pursuant to sections 105(a), 363(b) and 363(c) of the Bankruptcy Code and the "doctrine of necessity" (discussed below). 11 U.S.C. §§ 105(a), 363(b) and (c). Section 363(b)(1) of the Bankruptcy Code states in pertinent part that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."

§ 363(b)(1).  If a Debtors' determination to use estate assets represents a reasonable business judgment, the bankruptcy court should approve such use.

25.     Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

26.     Under the "doctrine of necessity," which is derived from section 105 of the Bankruptcy Code, it is appropriate for a bankruptcy court to exercise its inherent equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the Debtors." *See In re Ionosphere Clubs Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984)). Accordingly, a court may authorize, prior to confirmation of a plan, the payment of prepetition obligations that are essential to the debtor's continued business operations and vital to reorganizational efforts. *Id.*

27.     The doctrine of necessity authorizes the relief requested in this Motion because the Workers are indispensable to both the Debtors' operations and the successful resolution of these Chapter 11 Cases.

28.     In addition, the Debtors believe that the unpaid Salaries and Wages earned within 180 days of the Petition Date that the Debtors seek to pay are entitled to priority status under section 507(a)(4) of the Bankruptcy Code and individually do not exceed $13,650 (*i.e.*, the maximum priority amount under that statute).

29.     Failure to pay the Labor Obligations would undoubtedly cause a loss of morale that would threaten the Debtors' ability to maximize value and reorganize.

30.     The relief requested in this Motion is necessary for the viability of the Business and a successful reorganization. Accordingly, the Debtors submit that the relief sought herein is consistent with sections 105(a), 507(a), and 541 of the Bankruptcy Code.

31.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

32.     The Debtors further seek a waiver of any stay of the effectiveness of an order approving this Motion.  As set forth above, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtors' operations and their efforts to pursue a reorganization.

33.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

**WHEREFORE**, the Debtors pray that this Court grant them (i) authority to pay all Labor Obligations and the Payroll Processing Costs, and (ii) such other relief that the Court deems just and proper.

Dated: October 7, 2021

<div style="text-align:right">

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Taner N. Thurman*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
Taner N. Thurman, Ga. Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Proposed Attorneys for Debtors*

</div>

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO. 21-21053-JRS** |
| **EXTRUSION GROUP, LLC, *et al.*,[1]** | **CHAPTER 11** |
| **Debtors.** | **[Joint Administration Requested]** |

**ORDER (A) AUTHORIZING DEBTORS
TO PAY ALL PREPETITION PAYROLL OBLIGATIONS,
AND (B) DIRECTING BANKS TO HONOR RELATED TRANSFERS**

Upon the motion (the "**Motion**")[2] filed by the above-captioned debtors and

debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 507(a),

541(d), 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h), seeking

entry of an order: (a) authorizing, but not directing, the Debtors to continue to honor and pay all

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

prepetition employee obligations as described more fully in the Motion and (b) directing all banks to honor the Debtors' prepetition transfers for payment of any of the foregoing and prohibiting banks from placing holds on, or attempting to reverse, any automatic transfers on account of the foregoing; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     For the reasons set forth on the record at the Hearing, the Motion is GRANTED as set forth herein.

2.     The Debtors are authorized, but not directed, to continue to honor and pay all pre-petition and post-petition Labor Obligations and Payroll Processing Costs; provided, however, that payments to or on behalf of any individual employee on account of any pre-petition Unpaid Compensation shall not exceed the amounts afforded priority status by any applicable provisions of section 507 of the Bankruptcy Code, including section 507(a)(4) of the Bankruptcy Code.

3.     To the extent that any employment or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts, and no relief is granted in that regard.

4.      All of the Debtors' banks are authorized and directed to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to Labor Obligations authorized by this Order, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

5.      Nothing herein shall be deemed to (a) authorize the payment of any amounts in satisfaction of severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; or (b) authorize the Debtors to cash out unpaid vacation or leave time upon termination of an employee, unless applicable state law requires such payment.

6.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

7.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9.      The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

### END OF ORDER ###

**Prepared and presented by:**

ROUNTREE LEITMAN & KLEIN, LLC

*/s/ Taner N. Thurman*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
Taner N. Thurman, Ga. Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Proposed Attorneys for Debtors*

**<u>Distribution List</u>**

William A. Rountree
Benjamin R. Keck
ROUNTREE LEITMAN & KLEIN, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329

Office of the United States Trustee
Attn: David Weidenbaum
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

# Exhibit B

https://tulsaworld.com/business/investment/georgia-company-proposes-manufacturing-plant-at-port-of-muskogee/article_11aaec9c-2066-11ec-88bd-c740cab78e7b.html

# Georgia company proposes manufacturing plant at Port of Muskogee

Rhett Morgan

Sep 29, 2021



Georgia-based Aero Nonwovens has proposed building a 175,000-square-foot plant at the Port of Muskoge here Tuesday.

Mike Simons, Tulsa World

Rhett Morgan

A Georgia-based company could be part of a $218 million investment expected to generate 225 new jobs at the Port of Muskogee.



**Last chance offer: $1 for six months**

Aero Nonwovens, LLC, which makes baby wipes and sanitary wipes, has proposed building a 175,000-square-foot plant at the port, which is located on the McClellan-Kerr Arkansas River Navigation System, according to the Oklahoma Department of Commerce.

Construction could begin in early 2022.

The company's headquarters is expected to remain in the Atlanta area, but a move to Muskogee is possible in the future, Amy Blackburn, a spokeswoman with the Commerce Department, wrote in an email.

Gov. Kevin Stitt has offered the company $1 million from the Oklahoma Quick Action Closing Fund dollars, but Aero hasn't accepted the incentive package, nor have any contracts been fully executed, Blackburn said.

Created in 2011, the closing fund is intended as a source of funds available to the governor to attract high-impact businesses when incentive payments are expected to be the deciding factor in a business's location decision.

Average pay for the jobs in Muskogee is expected to be $43,975, documents show. Per-capita income for Muskogee County residents in 2019 was $23,826, according to the U.S. Census Bureau.

The governor's closing fund money is tied to the construction of the new facility, with half payable upon 50% completion of the build, and the remaining payable when construction is complete — or when $16 million has been invested in the facility, documents indicate.

The remaining $202 million is to be used for machinery, equipment and personnel.

**Featured video:**

Prolonged cold snap slows navigation at Tulsa Port of Catoosa

Throwback Tulsa: Port of Catoosa opens 50 years ago

# Tulsa Port of Catoosa



The first barge to travel the completed McClellan-Kerr Navigation System arrives at the Port of Catoosa on January 21, 1971, carrying a supply of newsprint for Oklahoma papers. The following day, eight pages of the Tulsa World were printed on this newly arrived paper. Tulsa World file photo

## Tulsa Port of Catoosa





The first barge to travel the completed McClellan-Kerr Navigation System arrives at the Port of Catoosa on January 21, 1971carrying a supply of newsprint for Oklahoma papers. The following day, 8-pages of the Tulsa World were printed on this newly-arrived paper. Tulsa World file photo.

# Tulsa Port of Catoosa



President Richard Nixon came to Tulsa in June 1971 to dedicate the McClellan–Kerr Navigation System at the Tulsa Port of Catoosa. Tulsa World file photo

## Tulsa Port of Catoosa



President Richard Nixon came to Tulsa in June 1971 to dedicate the McClellan-Kerr Navigation System at the Tulsa Port of Catoosa. Tulsa World file photo

## Tulsa Port of Catoosa



Sen. John McClellan, President Richard Nixon, and Robert Kerr, Jr. formally dedicate the Arkansas River Navigation System at the Tulsa Port of Catoosa, June 5, 1971. Tulsa World file photo

## Tulsa Port of Catoosa



CW/CPR/CD9RA-OGBYCD.4 MAHZQHMZ1RSHMMRSH0L1 CLRFG017 OLRS.APH

President Richard M. Nixon at the formal dedication of the Port of Catoosa, June 5, 1971. Tulsa World file photo

# 12 months for just $29.99

# Digital Editor's Sale!

## $29.99 for 12 months

Support local journalism made by the Tulsa World newsroom. Just $29.99 for 12 months for a digital-only subscription for a limited time. Subscribe in less than a minute: **https://go.tulsaworld.com/april29**

**rhett.morgan@tulsaworld.com**

**Party Casino**
Sponsored



Join Now

**Party Casino**

AdChoices ▷                              Sponsored

## Rhett Morgan
**Staff Writer**

I'm in my fourth decade as a reporter. I cover real-estate development, manufacturing, aerospace, entrepreneurship and all other topics related to the Work and Money section.

Document Page 43 of 47

# Exhibit C

**FILED - Oklahoma Secretary of State #3512793924 11/14/2019**
**OKLAHOMA Secretary of State Electronic Filing**

## ARTICLES OF ORGANIZATION
**DOMESTIC LIMITED LIABILITY COMPANY**
Document Number: 42838730002    Submit Date: 11/14/2019

### LIMITED LIABILITY COMPANY NAME

The name of the Limited Liability Company is:
AERO NONWOVENS, LLC

### PRINCIPAL PLACE OF BUSINESS ADDRESS

4520 NEOSHO AVE                    Email - mike@mikehouston.com
MUSKOGEE, OK 74403 USA

### EFFECTIVE DATE

**Effective Date:**
Same as filing date.

### DURATION

Perpetual

### REGISTERED AGENT AND REGISTERED OFFICE ADDRESS

**Agent Name**
AERO NONWOVENS, LLC
**Address**
4520 NEOSHO AVE
MUSKOGEE, OK 74403 USA

### ATTACHMENTS

**File Label**                    **File Name and Path**
Articles of Organization          3511734-2.pdf

### SIGNATURE

I hereby certify that the information provided on this form is true and correct to the best of my knowledge and by attaching the signature I agree and understand that the typed electronic signature shall have the same legal effect as an original signature and is being accepted as my original signature pursuant to the Oklahoma Uniform Electronic Transactions Act, Title 12A Okla. Statutes Section 15-101, et seq.

Dated - 11/14/2019

**Signature Names**
MIKE HOUSTON

[End Of Image]

# Articles of Organization
### (Oklahoma Limited Liability Company)
## Of
## AERO NONWOVENS, LLC

TO: OKLAHOMA SECRETARY OF STATE
2300 N Lincoln Blvd., Room 101 State Capitol
Oklahoma City, Oklahoma 73105-4897
(405) 522-2520

I hereby execute the following articles of organization for the purpose of forming an Oklahoma limited liability company pursuant to the provisions of Title 18, Section 2005:

### <u>Article 1.</u>

1.  The name of the limited liability company is Aero Nonwovens, LLC.

2.  The street address of the company's principal place of business is 4520 Neosho Ave, Muskogee, OK 74403.

3.  The e-mail address of the company's primary contact for the registered business is mike@mikehouston.com.

4.  The name and street address of the registered agent in the state of Oklahoma is Aero Nonwovens, LLC 4520 Neosho Ave, Muskogee, OK 74403.

5.  The term of existence for Aero Nonwovens, LLC is perpetual.

This 14th day of November, 2019.

Micheal T. Houston as Organizer

## CERTIFICATE OF SERVICE

I, Nathaniel T. DeLoatch, hereby certify that on the 8th day of October, 2021, I served or caused

to be served the foregoing **NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF**

**PAPERS** and the accompanying **EXHIBIT A** upon the following parties via ECF:

*(Counsel to the Debtor)*
William A. Rountree
Rountree Leitman & Klein, LLC
Century Plaza I, Suite 350
2987 Clairmont Road
Atlanta, GA 30329
(404) 584-1244
Fax : (404) 581-5038
Email: wrountree@rlklawfirm.com

Taner Nolan Thurman
Rountree Leitman & Klein LLC
2987 Clairmont Rd., Suite 350
Atlanta, GA 30329
(404) 584-1238
Email: tthurman@rlklawfirm.com

Nancy J. Gargula
United States Trustee, Region 21
By: David S. Weidenbaum, Trial Attorney
United States Department of Justice
Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303
(404) 331-4437
Email: david.s.weidenbaum@usdoj.gov

*/s/ Nathaniel T. DeLoatch*
Nathaniel T. DeLoatch
GA Bar No. 216330

Gibson, Dunn &

Crutcher LLP