**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| In Re:<br><br>**EXTRUSION GROUP, LLC,** *et al.*,[1]<br><br>Debtors. | CASE NO. 21-21053-JRS<br><br>CHAPTER 11<br><br>[Joint Administration Requested] |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF**
**AN ORDER ENFORCING THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file this emergency motion (the "**Motion**") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Order**"), pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to enforce the automatic stay against Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (collectively "**Kimberly-Clark**"). In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Northern District of Georgia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

## BACKGROUND

4. On October 5, 2021 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

5. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not been appointed in these Chapter 11 Cases.

7. The Debtors are embroiled in a fight for survival against a massive corporation that seeks to crush its competition with its army of lawyers, which has forced the Debtors to incur over $7 million in legal fees defending themselves (about $3 million of which remain outstanding). The strategy appears to be working (at least for now), given that the Debtors now find themselves in bankruptcy court due to their enormous legal bills, temporarily unable to defend themselves.

8. However, hope is on the horizon. The Debtors' principals are feverishly working on another startup and have received commitments for over $120 million in funding and just need a little more to get off the ground. Once the funding is in place, the new company will place an order with the Debtors for millions of dollars in machinery, which will enable the Debtors to afford their lawyers and emerge victorious in their legal battle.

9. The Debtors are owned and operated by three former engineers and middle managers who, many years ago, worked for Kimberly-Clark Corporation (the "**K-C**

Corporation").[1] The Debtors' main principals left the K-C Corporation at various times between 2006-09 and started a consulting business around that time.

10. In 2011–2012, the Debtors' principals formed Debtor EG Global, LLC ("**EG Global**") and lead debtor Extrusion Group, LLC ("**Extrusion Group**"). They then formed debtor EG Ventures, LLC ("**EG Ventures**") the following year. EG Global is a holding company owned by the Debtors' principals, which in turn owns 100% of the membership interests in Extrusion Group and EG Ventures. Extrusion Group is the primary operating company. EG Ventures does not have significant operations. Three of the Debtors' principals formed Extrusion Group Services LLC in 2016 to provide ancillary services related to the equipment that Extrusion Group sells.

11. Extrusion Group is an industrial machinery manufacturing and consulting company. Based on their many years of engineering experience, the Debtors' main principals have the knowledge and ability to design and oversee the manufacture of massive industrial machines that produce non-woven fabric and plastic materials used in products such as wet wipes, diapers, face masks, and more.

12. The nature of the Debtors' businesses is such that they have a modest amount of income from consulting services and occasional multi-million-dollar influxes of cash when Extrusion Group sells a huge piece of manufacturing equipment and related components and consulting services, which has happened every few years. If it was not for their extraordinary legal expenses caused by Kimberly-Clark, the Debtors' businesses would be very profitable. Since their last major sale, the Debtors' cash reserves have dwindled as they have been forced to fend off Kimberly-Clark's legal onslaught. The Debtors do not have any significant secured financing.

---

[1] The Debtors have a fourth principal who did not work for the K-C Corporation and joined as their general counsel.

-3-

## THE DISTRICT COURT CASE

13. The Debtors' principals have been extremely careful not to use any proprietary Kimberly-Clark intellectual property, using only intellectual property in the public domain and acting on advice of counsel. Nevertheless, after learning about the potential competition, Kimberly-Clark filed a 145-page complaint against the Debtors and several of its principals in October 2018 in the U.S. District Court for the Northern District of Georgia Case No. 1:18-cv-04754-SDG (the "**District Court Case**"), accusing them of intellectual property infringement and a slew of other purported harms. Kimberly-Clark has tried and failed twice now to shut down the Debtors with early injunctive relief. They have also significantly revised their claims upon determining, after protracted litigation, that their initial theories had no merit. [Dist. Ct. Doc. 156, 168, 184.] This competition-destroying strategy is consistent with actions Kimberly-Clark has taken over the years against others who have gone to work for competitors, who were shown no mercy. It has nothing to do with facts or colorable claims—Kimberly-Clark is merely using its corporate heft to spend potential competitors like the Debtors into bankruptcy.

14. Indeed, Kimberly-Clark has been remarkably unsuccessful in prosecuting the District Court Case, which the Debtors' pre-petition litigation counsel aptly dubbed a "trade secret case that's looking for a trade secret." [Dist. Ct. Doc. 162-1 at 42:19-20.]

15. Kimberly-Clark sought expedited discovery at the outset of the District Court Case in an unsuccessful attempt to obtain evidence to support a preliminary injunction. [Dist. Ct. Doc. 5.] The district court denied that motion on the basis that Kimberly-Clark had failed to demonstrate an emergency. [Dist. Ct. Doc. 43, Thrash, J.] The Court heard argument that Kimberly-Clark had the information upon which it based its claims for at least 10 months before filing its Complaint,

and that Kimberly-Clark's knowledge of many of the relevant facts dated back many years before the 2018 Complaint was filed. [*Id.*]

16.     Thereafter, on May 3, 2019, Kimberly-Clark sought a temporary restraining order to prevent Extrusion Group from selling its MultiForm™ machine to its Chinese customer, Nanning Qioahong. [Dist. Ct. Doc. 62.] In seeking the temporary restraining order, Kimberly-Clark admitted it could not show a likelihood of success on the merits but asked the district court to make an inference of that likelihood based on an alleged failure to produce certain documents, particularly design drawings of the machine. [Dist. Ct. Doc. 62, 162 at 21-22.]

17.     Extrusion Group's pre-petition litigation counsel argued that Kimberly-Clark had been given a full set of the relevant design drawings and Extrusion Group's process manuals and, while some of drawings had not been shared, the relevant information as to that aspect of the machine is in the public domain anyway. [Dist. Ct. Doc. 162 at 24-25.] He further argued that Kimberly-Clark had taken the opportunity to inspect the fully assembled machine before filing the motion, and yet Kimberly-Clark's motion contained no evidence of misuse of patented technology or trade secrets. [Dist. Ct. Doc. 162 at 26-32.]

18.     Indeed, Kimberly-Clark did not even argue that there was infringement/ misappropriation but only that five elements of the machine were "similar" to Kimberly-Clark intellectual property—all of which is in the public domain, with most of it placed there by Kimberly-Clark itself. [*Id.*] He noted that the specific issues Kimberly-Clark had been complaining of from the beginning are not even subjects of Kimberly-Clark's case now. [*Id.*] In fact, Extrusion Group believes that the whole case is based on Kimberly-Clark testing some nonwoven material that Kimberly-Clark mistakenly believed to have been manufactured by Extrusion Group—when in fact it was likely Kimberly-Clark's own nonwoven material. [*Id.*]

19. The district court denied Kimberly-Clark's request for a temporary restraining order, stating that Kimberly-Clark had not shown sufficient likelihood of success on the merits and finding that there was no showing of irreparable harm. The district court found that the other two factors, the public interest and balance of the harms, were even between the parties, noting as follows: "If . . . the plaintiff can't make out its case as the defendant contends, . . . then the public is harmed because the plaintiff is maintaining an improper monopoly based upon public domain process rather than legitimate trade secrets." [Dist. Ct. Doc. 88, Thrash, J.]

20. Discovery in the district court case has since concluded and Kimberly-Clark never moved for a preliminary injunction in the meantime.

### KIMBERLY-CLARK'S POST-PETITION FILING IN THE DISTRICT COURT

21. After the Debtors filed their Chapter 11 petitions, the district court judge asked the remaining parties (Kimberly-Clark and the two individual co-defendants, Michael Houston and Michael Cook (collectively, the "**Individual Defendants**")) to let the courtroom deputy know whether they supported or objected to the District Court Case being stayed against the Individual Defendants as well. The Individual Defendants complied by sending an email to the courtroom deputy.

22. However, Kimberly-Clark went well beyond the district court judge's instructions and took it upon themselves to file on the district court docket a "Plaintiffs' Reply to 'Plea of Stay' And Bankruptcy Filing by Corporate Defendants" (the "**Post-Petition District Court Motion**"), wherein Kimberly-Clark requested that the district court judge unilaterally decide the automatic stay is inapplicable not only to the Individual Defendants but to the Debtors as well, and allow the pre-petition District Court Case to proceed against the Debtors. Kimberly-Clark did not serve the Post-Petition District Court Motion on Debtors' bankruptcy counsel, other than as a buried

attachment to Kimberly-Clark's counsel's entry of appearance in the bankruptcy case. Debtors' bankruptcy counsel only became aware of the Post-Petition District Court Motion when Debtors' pre-petition litigation counsel forwarded it by email. Nor did Kimberly-Clark file a stay relief motion or otherwise request this Court's permission—or even give any notice—prior to filing the Post-Petition District Court Motion.

## RELIEF REQUESTED

23. By this Motion, the Debtors request entry of an Order enforcing the automatic stay of section 362 of the Bankruptcy Code and ruling that the District Court Case is stayed as to the Debtors.

## BASIS FOR RELIEF REQUESTED

24. Section 362 of the Bankruptcy Code operates as a stay of, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

25. The automatic stay is "one of the fundamental debtor protections provided under the Bankruptcy Code for the purpose of promoting equal creditor treatment and giving the debtor a breathing spell." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011). "Any action taken in violation of a stay is invalid and voidable, absent limited equitable circumstances." *Walker v. RDR Real Estate*, 640 Fed. Appx. 411, 414 (6th Cir. 2016) (citing *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909-10 (6th Cir. 1993)).

26. Kimberly-Clark's actions are an effort to continue a judicial action against the Debtors that was commenced before the commencement of the Debtors' cases under the Bankruptcy Code.

27. Section 105(a) of the Bankruptcy Code authorizes the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In instances where the automatic stay provision is violated, courts may award damages under the separate statutory contempt power of § 105. *Gordon v. Wells Fargo Bank, N.A. (In re Latira Shayonica Banks)*, No. 19-05172-LRC, 2020 Bankr. LEXIS 844, at *9 (Bankr. N.D. Ga. Mar. 31, 2020) (citing *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995)); *see also In re Nicole Gas Production, Ltd.,* 519 B.R. 723, 737 (Bankr. S.D. Ohio 2014) ("Under § 105(a), the court has the authority to use its civil contempt powers to compensate trustees for damages incurred as a result of violations of the automatic stay.").

28. In *Harris v. Stevens and Tozzi Law, LLC (In re Harris),* Adv. Proc. No. 18-02043-jrs (Bankr. N.D. Ga. 2018), the debtor filed a Chapter 11 case on the eve of a contempt hearing. The pre-petition trial court judge went forward with the post-petition hearing, opined that his contempt proceeding was excepted from the automatic stay under section 362(b)(4) and scheduled a second post-petition contempt hearing *sua sponte*. The debtor filed an adversary proceeding alleging a stay violation, and this Court entered a judgment ruling that the hearing was a violation of the automatic stay. [Adv. Proc. No. 18-02043-jrs Docket No. 15].

29. Kimberly-Clark cites inapposite cases involving post-petition torts committed by bankruptcy debtors and multiple contempt orders resulting from violations of multiple temporary restraining orders and preliminary injunctions. *See, e.g., Dominic's Restaurant Dayton, Inc. v. Mantia,* 683 F.3d 757 (6th Cir. 2012) (involving four pre- and post-petition injunctions and four

contempt motions for ongoing violations thereof); *Voice Sys. & Servs. v. VMX, Inc.,* 1992 U.S. Dist. LEXIS 21744 (N.D. Okla. 1992) (finding explicitly that the plaintiff's complaint "does not involve pre-petition claims" and that plaintiff had shown reasonable likelihood of success on the merits of its claims for post-petition patent infringement). That is most certainly not the case here. Kimberly-Clark has twice tried to obtain early injunctive relief against the Debtors and has failed both times. The district court has ruled that Kimberly-Clark failed to show likelihood of success on the merits. The Debtors are not committing any post-petition torts, and the automatic stay prevents Kimberly-Clark from moving forward with its pre-petition litigation.

30. While district courts have asserted authority to determine the scope of the automatic stay in certain circumstances, it is widely recognized that deference should be given to the bankruptcy courts, as "exercising concurrent jurisdiction may inhibit the bankruptcy court's authority and equitable powers to assure the orderly conduct of the reorganization process and prevent the bankruptcy court from construing its own stay" since in "many cases, harmony, fairness, and efficiency are best achieved by centralizing construction of the automatic stay in the Bankruptcy Court." *Great Am. Ins. Co. v. Glasgow Equip. Serv.*, 2018 U.S. Dist. LEXIS 79195 at *4 (S.D. Fla. 2018) (quoting *Chicago Title Ins. Co. v. Lerner*, 435 B.R. 732, 735-36 (S.D. Fla. 2010) (quoting *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985) (internal quotation marks omitted)).

31. Kimberly-Clark is obviously aware that it will lose the District Court Case on the merits once the Debtors are able to obtain counsel. Therefore, Kimberly-Clark is attempting an end run around the automatic stay in hopes that it can use the Debtors' current unrepresented status to obtain a judgment by default. In the interest of the estates and their legitimate creditors, this

Court should exercise its jurisdiction to enforce the automatic stay and allow the Debtors to reorganize.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and (ii) grant such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: October 12, 2021 | **ROUNTREE LEITMAN & KLEIN, LLC** |
| | */s/ William A. Rountree* <br> William A. Rountree, Ga. Bar No. 616503 <br> Benjamin R. Keck, Ga. Bar No. 934504 <br> Taner N. Thurman, Ga. Bar No. 835238 <br> Century Plaza I <br> 2987 Clairmont Road, Suite 350 <br> Atlanta, GA 30329 <br> (404) 584-1238 Telephone <br> wrountree@rlklawfirm.com <br> bkeck@rlklawfirm.com <br> tthurman@rlklawfirm.com <br> *Proposed Attorneys for Debtors* |

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO. 21-21053-JRS** |
| **EXTRUSION GROUP, LLC,** *et al.*,[1] | **CHAPTER 11** |
| **Debtors.** | **[Joint Administration Requested]** |

**ORDER ENFORCING THE AUTOMATIC STAY**

This matter came before the Court on _____, 2021 for hearing (the "**Hearing**") on the motion of the above-captioned debtors (collectively, the "**Debtors**") for an order ruling that the automatic stay applies to certain pre-petition litigation [Doc. __] (the "**Motion**"). Upon consideration of the Motion, representations of counsel at the Hearing, and all other matters of record; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.[1]

2. Subject to section 362 of the Bankruptcy Code, Kimberly-Clark is hereby stayed, restrained, and enjoined from:

    a. commencing or continuing (including the issuance or employment of process) any judicial, administrative, or other action or proceeding against the Debtors that was or could have been commenced before the commencement of the Debtors' chapter 11 cases (including, without limitation, the District Court Case) or recovering a claim against the Debtors that arose before the commencement of the Debtors' chapter 11 cases;

    b. enforcing, against the Debtors or against property of their estates, a judgment or order obtained before the commencement of the Debtors' chapter 11 cases;

    c. taking any action, whether inside or outside the United States, to obtain possession of property of the Debtors' estates, wherever located (including, but not limited to, owned, operated, or leased property thereon, or to exercise control over property of the estates or interfere in any way with the conduct by the Debtors of their businesses, including, without limitation, attempts to interfere with deliveries or events or attempts to arrest, seize or reclaim any equipment, supplies or all other assets in which the Debtors have legal or equitable interests;

    d. taking any action to create, perfect, or enforce any lien against the property of the Debtors' estates;

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

  e. taking any action to create, perfect, or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose prior to the commencement of the Debtors' chapter 11 cases;

  f. taking any action to collect, assess, or recover a claim against the Debtors that arose prior to the commencement of the Debtors' chapter 11 cases; and

  g. offsetting any debt owing to the Debtors that arose before the commencement of the Debtors' chapter 11 cases against any claim against the Debtors.

3. Accordingly, pursuant to section 362 of the Bankruptcy Code, Kimberly-Clark is hereby directed to immediately withdraw the Post-Petition District Court Motion and cease all litigation in the District Court Case.

4. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5. The Court shall retain jurisdiction over any and all issues arising from or related to this Order.

### ### END OF ORDER ###

**Prepared and presented by:**

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ William A. Rountree*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
Taner N. Thurman, Ga. Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Proposed Attorneys for Debtors*

**Distribution List**

William A. Rountree
Benjamin R. Keck
ROUNTREE LEITMAN & KLEIN, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329

Office of the United States Trustee
Attn: David Weidenbaum
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

Jeffrey C. Krause, Esq.
Michael Neumeister, Esq.
333 South Grand Avenue
Los Angeles, CA 90071

John G. Conte, Esq.
200 Park Avenue
New York, New York 10166

James A. Lamberth
Harris B. Winsberg
Nathaniel T. DeLoatch
600 Peachtree Street NE
Suite 3000
Atlanta, GA 30308