IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| In re: | Case No.: 21-21053-JRS |
| **EXTRUSION GROUP, LLC,** *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**MOTION OF KIMBERLY-CLARK CORPORATION AND KIMBERLY-CLARK
GLOBAL SALES, LLC FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11
CASES OR, IN THE ALTERNATIVE, GRANTING RELIEF
FROM THE AUTOMATIC STAY**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

JURISDICTION AND VENUE ............................................................................ 5

BACKGROUND ................................................................................................... 5

A.    Kimberly-Clark's Intellectual Property And Relation To Extrusion Group ........... 5

B.    Extrusion Group's Theft Of Kimberly-Clark's Intellectual Property .................... 7

C.    Kimberly-Clark Commenced The District Court Action And Uncovered
Further Illegal Activity ................................................................................ 8

D.    The Debtors Filed For Chapter 11 And Seek To Stay The District Court
Action To Deprive Kimberly-Clark Of Its Day In Court ..................................... 11

RELIEF REQUESTED ........................................................................................ 13

BASIS FOR RELIEF REQUESTED .................................................................... 13

A.    Cause Exists To Dismiss The Chapter 11 Cases Pursuant To Section
1112(b) Of The Bankruptcy Code Because They Were Filed In Bad Faith ......... 13

(1)    The Sole Purpose of These Chapter 11 Cases Is to Stay the District
Court Action So That the Debtors Can Profit From Future
Infringement and Misappropriation of Kimberly-Clark's
Intellectual Property and Trade Secrets. ...................................... 14

(2)    The Debtors Do Not Have Significant Creditors That Warrant the
Protections of Chapter 11 ............................................................ 18

(3)    The Debtors Have Few Employees .............................................. 19

B.    In The Alternative To Dismissal, The Court Should Grant Kimberly-Clark
Relief From The Automatic Stay Based On The Debtors' Bad Faith Filing ......... 19

C.    Kimberly-Clark Is Entitled To Stay Relief Due To Its Pending District
Court Action ............................................................................................. 20

(1)    Relief From Stay Is Warranted So the IP Dispute Can Be Resolved
in the Pending District Court Action. .......................................... 21

(2)    The Curtis Factors Also Weigh In Favor of Granting Relief From
Stay ......................................................................................... 27

D.    If Applicable, The 14-Day Stay Should Be Waived .......................................... 32

CONCLUSION ................................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*,
   749 F.2d 670 (11th Cir. 1984) ....................................................................................13, 14

*In re Asanda Air II LLC*,
   600 B.R. 714 (Bankr. N.D. Ga. 2019) ..............................................................13, 14, 16, 18

*In re AstroTurf, LLC*,
   2017 WL 3889710 (Bankr. N.D. Ga. Sept. 15, 2017) ...........................................................20

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
   683 F. Supp. 899 (E.D.N.Y. 1988) ......................................................................................25

*In re Burger Boys, Inc.*,
   183 B.R. 682 (S.D.N.Y. 1994).............................................................................................29

*In re Dahlgren Int'l, Inc.*,
   147 B.R. 393 (N.D. Tex. 1992).............................................................................................24

*In re Dallas*,
   2011 WL 6101832 (Bankr. S.D. Ga. Nov. 29, 2011) ................................................, 22, 25, 32

*Davis v. Day (In re Day)*,
   2004 WL 2191632 (Bankr. S.D. Ga. Jan. 29, 2004)........................................................ 22, 25

*In re Davis*,
   899 F.2d 1136 (11th Cir. 1990) ...........................................................................................29

*Disciplinary Bd. v. Feingold (In re Feingold)*,
   730 F.3d 1268 (11th Cir. 2013) ...........................................................................................19

*In re Double W. Enters.*,
   240 B.R. 450 (Bankr. M.D. Fla. 1999) .....................................................................13, 15, 20

*Egwineke v. Robertson (In re Robertson)*,
   244 B.R. 880 (Bankr. N.D. Ga. 2000) .................................................................................21

*Furness v. Lilienfield*,
   35 B.R. 1006 (D. Md. 1983).................................................................................................15

*Hazelquist v. Guchi Moochie Tackle Co.*,
   437 F.3d 1178 (Fed. Cir. 2006)............................................................................................23

*In re HBA East, Inc.*,
    87 B.R. 248 (Bankr. E.D.N.Y. 1988)............................................................14, 15, 17

*In re Herndon Executive Center, Inc.*,
    36 B.R. 803 (Bankr. M.D. Fla. 1984) ....................................................................15

*In re Highcrest Mgmt. Co.*,
    30 B.R. 776 (Bankr. S.D.N.Y. 1983)......................................................................25

*In re Jotan, Inc.*,
    232 B.R. 503 (Bankr. M.D. Fla. 1999) ..................................................................29

*Larami Ltd. v. Yes! Ent't Corp.*,
    244 B.R. 56 (D.N.J. 2000) .....................................................................................23

*In re Martin*,
    51 B.R. 490 (Bankr. M.D. Fla. 1985) ....................................................................15

*In re Miles*,
    477 B.R. 266 (Bankr. N.D. Ga. 2012) ...................................................................20

*In re Moog*,
    159 B.R. 357 (Bankr. S.D. Fla. 1993)..............................................................14, 15

*In re People's Choice Home Loan*,
    2007 WL 9637067 (Bankr. C.D. Cal. Oct. 29, 2007)............................................29

*Phx. Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*,
    849 F.2d 1393 (11th Cir. 1988) *abrogated on other grounds* ..............................13, 14, 17, 19

*In re Piper Aircraft Corp.*,
    244 F.3d 1289 (11th Cir. 2001) .............................................................................28

*In re R.J. Groover Constr., LLC*,
    411 B.R. 473 (Bankr. S.D. Ga. 2008) ...................................................................22

*Schuler v. Sandalwood Nursing Ctr., Inc. (In re Sandalwood Nursing Ctr., Inc.)*,
    2018 WL 4057234 (Bankr. N.D. Ga. Aug. 23, 2018).................................20, 28, 30

*In re Serfass*,
    325 B.R. 901 (M.D. Fla. 2005)..............................................................................14

*Sonnax Ind., Inc. v. Tri Component Prods. Corp. (In re Sonnax Ind., Inc.)*,
    907 F.2d 1280 (2nd Cir. 1990)..............................................................................28

*Synovus Bank v. Brooks (In re Brooks)*,
    488 B.R. 483 (Bankr. N.D. Ga. 2013) ..................................................................13

*In re Taub*,
    438 B.R. 39 (Bankr. E.D.N.Y. 2010)........................................................................32

*The Singer Co. N.V. v. Groz-Beckert KG (In re The Singer Co. N.V.)*,
    2002 WL 243779 (S.D.N.Y. Feb. 20, 2002)............................................................24

*U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re National Gypsum Co.)*,
    145 B.R. 539 (N.D. Tex. 1992)................................................................................24

*Voice Systems & Services, Inc. v. VMX, Inc.*,
    1992 WL 510121 (N.D. Okla. Nov. 5, 1992) .........................................................31

*Walker v. Wilde (In re Walker)*,
    927 F.2d 1138 (10th Cir. 1991) ...............................................................................22

## STATUTES

11 U.S.C. § 102 ...............................................................................................................13

11 U.S.C. § 1112 ..................................................................................................... *Passim*

28 U.S.C. § 157 ..........................................................................................................5, 20

28 U.S.C. § 1295 .............................................................................................................30

## OTHER AUTHORITIES

S.Rep. No. 95–989 (1978) ...............................................................................................23

## RULES

Local Bankruptcy Rule 9015-3 .........................................................................................20

Kimberly-Clark Corporation and Kimberly-Clark Global Services, LLC (collectively, "**Kimberly-Clark**"), by and through the undersigned counsel, hereby file this motion (the "**Motion**") for entry of an order (i) dismissing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") for cause pursuant to section 1112(b) of the Bankruptcy Code, or (ii) in the alternative, granting Kimberly-Clark relief from the automatic stay, pursuant to section 362(d) of the Bankruptcy Code, to continue litigation currently pending against the above-captioned debtors (the "**Debtors**" or "**Extrusion Group**") in the United States District Court for the Northern District of Georgia (the "**District Court**"), Civil Action File No. 1:18-cv-04754-SDG (such action, the "**District Court Action**"), in order to (a) obtain injunctive relief against the Debtors to stop their postpetition (and continuing) patent infringement and misappropriation of Kimberly-Clark's trade secrets, and (b) liquidate (but not enforce) Kimberly-Clark's prepetition claims against the Debtors asserted in the District Court Action.[2]    In support of the Motion, Kimberly-Clark respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.    For the last three (3) years, Kimberly-Clark has been litigating the District Court Action in good faith in order to protect its valuable patent rights and trade secrets from the Debtors' and their principals' continued infringement and misappropriation.  On the eve of a District Court ordered deadline requiring the Debtors to retain new counsel so that the District Court Action may continue, and weeks before the deadline for filing dispositive motions, the Debtors commenced

---

[2]  For the avoidance of doubt, Kimberly-Clark is also seeking relief in the District Court Action against Michael Houston and Michael Cook, the Debtors' principals (the "**Individual Defendants**" and together with the Debtors, the "**Defendants**").  Such relief is not subject to the automatic stay.  *See Order* [D. Ct. Dkt. 396].  The Debtors have asserted that they intend to seek an order extending the automatic stay to the Individual Defendants. Kimberly-Clark reserves the right to oppose any such relief if and when the Debtors seek it.  As explained below, Kimberly-Clark has attempted to coordinate with the Debtors' counsel on a consolidated briefing schedule for this Motion and the Debtors' anticipated motion, but the Debtors have not responded to Kimberly-Clark's proposal.

these Chapter 11 Cases.  These Chapter 11 Cases were not commenced for a valid reorganization purpose.  Rather, they were filed as a litigation tactic to use the automatic stay as a means of delaying final adjudication of the parties' rights in the District Court Action while the Debtors simultaneously attempt to continue to infringe on Kimberly-Clark's patented technology without recourse.

2.       The automatic stay was not intended to be used as both a sword and a shield in this manner.  Under Eleventh Circuit precedent, these Chapter 11 Cases were filed in bad faith, establishing cause for dismissal under section 1112(b) of the Bankruptcy Code.  For the reasons explained below, dismissal is the proper remedy.  However, the same bad faith and the circumstances surrounding these Chapter 11 Cases and the District Court Action warrant relief from the automatic stay so that the merits of Kimberly-Clark's claims can be resolved with finality in the District Court.  Kimberly-Clark respectfully requests the Court to grant the necessary relief requested herein so that the Debtors may not continue to harm Kimberly-Clark's valuable rights without regard for the District Court's prior orders and now the Bankruptcy Code.

3.       Kimberly-Clark's intellectual property rights are an integral component of its business, and are at the heart of the pending District Court Action.  Kimberly-Clark is one of the country's leading manufacturers of personal and professional care products.  It creates a variety of consumer and personal care products, including diapers, baby wipes, feminine products, facial and bathroom tissues, and paper towels sold under some of the most well-known and well-loved brands, including Huggies®, Kleenex®, Scott®, Cottonelle®, and Kotex®.  Kimberly-Clark's products are manufactured using equipment and processes safeguarded by many highly valuable patents and trade secrets.

2

4.    Extrusion Group was formed by three (3) former Kimberly-Clark engineers, each of whom worked for Kimberly-Clark for more than two decades.  During their tenure at Kimberly-Clark, the Debtors' principals were directly and closely involved in Kimberly-Clark's proprietary and trade secret technology, including certain equipment called "meltblown" dies and a manufacturing process called "coform," which is used to make the proprietary material in Huggies® baby wipes that only Kimberly-Clark makes.  In 2018, after learning that Extrusion Group was selling meltblown dies "just like" Kimberly-Clark's and planned to sell an entire coform manufacturing line to a Chinese competitor, Kimberly-Clark commenced the District Court Action seeking a permanent injunction to prevent Extrusion Group and the Individual Defendants from continuing their intellectual property theft and for related causes of action.

5.    The parties have conducted extensive discovery in the District Court Action with respect to both Kimberly-Clark's and the Defendants' claims and defenses.  Despite Defendants' delays, "outright lie[s],"[3] "abuse of discovery,"[4] and willful withholding of information for which they have been sanctioned by the District Court, discovery has revealed that the Defendants: (i) took and used Kimberly-Clark documents to jumpstart their businesses; (ii) knowingly incorporated Kimberly-Clark proprietary technology into the equipment they sold to customers; (iii) shipped to China a manufacturing line that embodied Kimberly-Clark's trade secrets and patented technology; (iv) formed at least one sister company for the express purpose of selling products made using Kimberly-Clark's technology; and (v) continue to sell and solicit sales of the infringing equipment to off-label companies in China and elsewhere.  Defendants dispute these contentions in the District Court Action.  While Kimberly-Clark believes the Defendants' positions

---

[3]  Declaration of John G. Conte (the "**Conte Declr.**"), Ex. 2 (D. Ct. Hr'g Tr. 5/3/2019) at 32:19–22.

[4]  Conte Declr., Ex. 3 (Order on Plaintiffs' Motion for Sanctions) at 3.

are meritless, the District Court can and will determine whether the Defendants are infringing Kimberly-Clark's patents and misappropriating its trade secrets (the "**IP Dispute**").

6.      Simply put, the Debtors filed these Chapter 11 Cases to use the automatic stay to avoid judgment against them, and to further delay a resolution of the IP Dispute that has been pending in the District Court for years, all while continuing to infringe Kimberly-Clark's patents and misuse its trade secrets.  The Debtors themselves acknowledge that they intend to use these Chapter 11 Cases to, at minimum, delay a resolution of the IP Dispute while the Debtors sell machinery that Kimberly-Clark asserts infringes and misappropriates its intellectual property and trade secrets to a non-debtor "startup" owned at least in part by the Individual Defendants.  *See e.g.*, Debtors' Employee Motion [D.I. 11], ¶ 2.

7.      The Debtors cannot be permitted to abuse the automatic stay solely to deprive Kimberly-Clark of a prompt determination of the IP Dispute while simultaneously continuing to steal Kimberly-Clark's intellectual property.  The Debtors do not appear to have a viable business if Kimberly-Clark prevails in the District Court Action.  Nor do they have any creditors that warranted bankruptcy relief.  As a result, there is simply no *bona fide* restructuring purpose furthered by these Chapter 11 Cases.  Kimberly-Clark therefore respectfully requests that this Court dismiss these Chapter 11 Cases for "cause" as "bad faith" filings pursuant to section 1112(b) of the Bankruptcy Code.

8.      Even if the Court does not dismisses these Chapter 11 Cases, "cause" exists to modify the stay to allow the District Court to resolve the IP Dispute, because: (a) the District Court Action has been pending for three (3) years and was on the verge of dispositive motions, (b) only the District Court can resolve the IP Dispute as between the non-debtor parties—Kimberly-Clark and the Individual Defendants, (c) it will be most efficient for the District Court to resolve the IP

Dispute as between Kimberly-Clark and the Debtors in the same jury trial with the IP Dispute against the Individual Defendants, (d) the IP Dispute does not involve any issues of bankruptcy law and is within the expertise of the District Court, (e) the IP Dispute includes a request to bar ongoing infringement, and (f) final resolution of the IP Dispute is necessary to determine whether the Debtors can be permitted to pursue the path they have asserted they intend to follow (*i.e.*, selling products that Kimberly-Clark contends infringe). An infringing defendant does not get a free pass to use intellectual property it does not own just because it is a debtor in a bankruptcy case. The IP Dispute must be promptly resolved by the District Court.

## <u>JURISDICTION AND VENUE</u>

9.      The United States Bankruptcy Court for the Northern District of Georgia (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.      The bases for the relief requested herein are sections 105(a), 362, and 1112 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## <u>BACKGROUND</u>

**A.      Kimberly-Clark's Intellectual Property And Relation To Extrusion Group**

12.      Kimberly-Clark employs more than 42,000 individuals worldwide and delivers its consumer products to more than 175 countries. Kimberly-Clark manufactures a variety of consumer and personal care products, such as baby wipes and diapers, that are formed from a type of material known as "nonwoven" fabric. Unlike fabrics made from cotton or wool in which

threads typically are interlaced at right angles, nonwoven fabrics are formed by bonding fibers together in an irregular and random manner using specialized equipment and processes.

13.    Kimberly-Clark is a leading innovator of nonwoven equipment, including foundational equipment called a "meltblowing die," and developed a proprietary manufacturing process called "coform" to make the nonwoven fabric used in its Huggies® baby wipes.[5]  It owns a number of patents covering the equipment and processes for creating meltblown and coform materials, including U.S. Patent No. 6,972,104 ("the **'104 Patent**")—asserted in the District Court Action—that claims an improved meltblowing die design that is smaller, more efficient and produces higher quality materials than prior designs.  Kimberly-Clark is the only commercial manufacturer of coform material in the world.  Kimberly-Clark also maintains a number of trade secrets related to improvements to its meltblowing and coforming equipment and processes.  These trade secrets cover non-public designs of key pieces of equipment and optimized process specifications that give Kimberly-Clark industry-leading meltblowing technology and positioning as the only company in the world with the technology needed to commercially make coform fabric.

14.    Extrusion Group is a collection of entities that were formed circa 2010 by former Kimberly-Clark engineers Michael Houston, Michael Cook, and Kurtis Brown.  Each of Mr. Houston, Mr. Cook, and Mr. Brown have expertise in various Kimberly-Clark nonwoven technologies, having worked for over two decades each at Kimberly-Clark in positions of trust and with access to (and in some cases development of) confidential technology.  Indeed, Mr. Cook worked extensively with Kimberly-Clark's meltblowing dies and is a named inventor of the '104 Patent (which he assigned to Kimberly-Clark during his employment).  Mr. Houston worked on a

---

[5]  Additional details regarding this technology, as well as a more thorough explanation of Kimberly-Clark's claims in the District Court Action, can be found in the *First Amended Complaint*, attached as <u>Exhibit 4</u> to the Conte Declaration.

number of Kimberly-Clark's coform manufacturing lines and was even responsible for managing the installation of one of them.

## B. Extrusion Group's Theft Of Kimberly-Clark's Intellectual Property

15. Since its formation, Extrusion Group has engaged in the business of designing and selling nonwoven manufacturing equipment—primarily meltblowing dies and coform manufacturing lines—based on intellectual property that Kimberly Clark asserts was stolen. Kimberly-Clark was first alerted to potentially infringing activity when it was informed that Extrusion Group had requested a quote from a vendor to manufacture meltblowing dies "just like" those used by Kimberly-Clark.[6]  It also learned that the Debtors were seeking investment to create a coform manufacturing line to make a private-label baby wipe "Like Huggies®."[7]  Later that year, Kimberly-Clark was approached by a Chinese company called Nanning Qiaohong New Materials Co., Ltd. ("**Qiaohong**") with samples of a coform material it claimed to have obtained from a company called "EG."[8]  In 2017, Kimberly-Clark also learned that a company called Avgol Ltd. had acquired "new" meltblowing technology from Extrusion Group.[9]  Based on what Kimberly-Clark had learned, it asked to have a meeting in May 2017 with Extrusion Group to resolve any potential intellectual property issues; however, Extrusion Group refused to disclose its technology to independent outside counsel for evaluation, and communications between the parties ceased.[10]

16. In late-2017 to early-2018, Qiaohong approached Kimberly-Clark once again providing additional details indicating that Kimberly-Clark's trade secrets were being used, and

---

[6]  Conte Declr., Ex. 5 (Redacted Declaration of Allen Frederic Vater), ¶ 15.

[7]  Conte Declr., Ex. 6 (Redacted Declaration of Bryan David Haynes), ¶ 20; Ex. 7 at 1.

[8]  Conte Declr., Ex. 5, ¶ 16.

[9]  Conte Declr., Ex. 6, ¶ 22.

[10]  *Id.*, ¶¶ 23–24.

identified Extrusion Group as the supplier of a manufacturing line and process it would implement in China to manufacture coform material.[11]  Also during this time, Kimberly-Clark received copies of meltblowing die drawings designed by Mr. Cook, which Kimberly-Clark asserts included their trade secrets.[12]

## C.    Kimberly-Clark Commenced The District Court Action And Uncovered Further Illegal Activity

17.    On October 15, 2018, Kimberly-Clark filed suit in the District Court for patent infringement and trade secret misappropriation against Extrusion Group, as well as trade secret misappropriation and breach of contract against the Individual Defendants.[13]  With its complaint, Kimberly-Clark also sought expedited discovery so that it could obtain the evidence that would support preliminary injunctive relief against Extrusion Group's use of infringing equipment and misappropriation of trade secrets in transactions with customers; the Court ultimately ordered that the case proceed on a standard discovery timeline, which commenced two weeks later.[14]

18.    Despite the Debtors' falsely verified interrogatory responses that they had no equipment or manufacturing lines,[15] Kimberly-Clark learned through a notice of inspection in March 2019 that Extrusion Group indeed had already constructed and demoed a complete coform manufacturing line to Qiaohong and was in the process of breaking it down and shipping it to China.  Confronted with Debtors' "abuse of discovery" in withholding information that was necessary for Kimberly-Clark to move for a preliminary injunction,[16] and the Debtors' imminent

---

[11]  Conte Declr., Ex. 5, ¶¶ 16–17.

[12]  Conte Declr., Ex. 6, ¶¶ 25–49.

[13]  *See* Conte Declr., Ex. 1 at ECF No. 1.

[14]  *See* Conte Declr., Ex. 1 at ECF Nos. 5, 43.

[15]  Conte Declr., Ex. 3 at 6–8.

[16]  *Id.* at 2–3.

export of the very manufacturing line that Kimberly-Clark sought to enjoin, Kimberly-Clark filed a Motion for Temporary Restraining Order (the "**TRO Motion**") on April 24, 2019.  Through the TRO Motion, Kimberly-Clark asked the District Court to enter an adverse inference on the likelihood of success due to the Debtors' discovery misconduct, and to enjoin the Debtors from exporting the coform manufacturing line to China until proper discovery could be completed to support a preliminary injunction.[17]  Kimberly-Clark did not ask the District Court to make any substantive rulings regarding the Debtors' trade secret misappropriation or patent infringement.

19.    The District Court ultimately declined to enter an adverse inference on the merits, and thus denied the TRO Motion.  However, at the hearing the District Court "indicated that it was 'extremely disturbed' by Defendants' responses to certain discovery requests" and "concluded 'that certainly there appears to have been abuse of discovery by Defendant.'"[18]  The Court later awarded Kimberly-Clark nearly $80,000 in sanctions on April 2, 2020.[19]

20.    As the case progressed, discovery confirmed that the coform manufacturing line the Debtors sold to Qiaohong copied key parameters and process specifications that Kimberly-Clark maintains as trade secrets.  Furthermore, when designing their meltblowing dies, discovery also revealed that the Debtors knowingly and purposefully kept track of design parameters used by Kimberly-Clark—which they knew to be trade secrets—and used that information to design their own equipment.  These are but a small sampling of the many clear examples of misappropriation of both Kimberly-Clark's meltblowing and coforming trade secrets revealed in discovery and already opined on by the experts in the District Court Action.

---

[17]  Conte Declr., Ex. 8 (Plaintiffs' Motion for Temporary Restraining Order).

[18]  Conte Declr., Ex. 3 at 2–3; *see also* Ex. 2 at 42:21–25, 44:10–18.

[19]  Conte Declr., Ex. 3 at 19.

21.     On the patent infringement side, the District Court has already expended significant resources, including having held a "Markman" hearing construing the claims of the '104 Patent and issuing its order on January 29, 2021.[20]   The District Court sided with Kimberly-Clark's positions on every disputed term—rejecting a number of Debtors' alleged noninfringement defenses and narrowing their arguments on the merits of the IP Dispute.[21]   The District Court thereafter set the close of fact discovery for May 14, 2021.[22]   As discovery was coming to a close in 2021, Kimberly-Clark learned that, at least a year prior, the Debtors made an additional sale of "new" meltblowing dies to Qiaohong.   These new dies were presented as an alleged "design around" to the claims of the '104 Patent but were deliberately withheld by the Debtors during discovery and *withheld from the District Court* during its "Markman" hearing and order.   In yet another sanctions order, the District Court agreed that Debtors had again improperly delayed discovery through "prejudicial" tactics in an attempt to thwart Kimberly-Clark's prosecution of its claims and granted in part Kimberly-Clark's second motion for sanctions on June 3, 2021, excluding any evidence of the Debtors' "new" die design (treating it the same for infringement purposes as the prior accused design).[23]

22.     Fact discovery closed on May 14, 2021.  The parties exchanged expert reports and took expert depositions, and expert discovery closed on September 1, 2021.[24]

---

[20]   *See* Conte Declr., Ex. 1 at ECF Nos. 255, 268.

[21]   Conte Declr., Ex. 9 (Claim Construction Order).

[22]   *See* Conte Declr., Ex. 1 at ECF No. 315.

[23]   Conte Declr., Ex. 10 (Order on Plaintiffs' Motion for Sanctions and to Exclude) at 2–6 (granting Kimberly-Clark's exclusion relief but finding that an additional sanction of a jury instruction or an award of attorneys' fees would be overly punitive).

[24]   *See* Conte Declr., Ex. 1 at ECF No. 315.

**D.      The Debtors Filed For Chapter 11 And Seek To Stay The District Court Action To Deprive Kimberly-Clark Of Its Day In Court**

23.      On September 13, 2021, the Defendants' prior counsel in the District Court Action filed a motion to withdraw.[25]  Kimberly-Clark objected insomuch as prior-counsel's motion was coupled to a motion to stay the case—Kimberly-Clark did not and does not want the District Court Action to be delayed unnecessarily due to the threat of additional harm from further infringing activity by the Debtors.[26]  The District Court granted the motion to withdraw on September 15, 2021, and denied the Defendants' requested stay of the District Court Action, setting the deadline for dispositive motions for November 1, 2021.[27]  That same day, September 15, 2021, the Court entered another order requiring Debtors to provide notice within 21 days—October 6, 2021—of the appointment of replacement counsel, reminding the Debtors "that no corporation, company or organization can represent itself" and that "[f]ailure to comply with this rule could result in a default judgment against the Extrusion Group entities."[28]

24.      On the eve of that deadline, on October 5, 2021 (the "**Petition Date**"), rather than hire replacement counsel as mandated by the District Court's order, the Debtors commenced these Chapter 11 Cases.  That same day, the Debtors also filed a *Plea of Stay* with the District Court asserting that the District Court Action was stayed pursuant to section 362 of the Bankruptcy Code as to "the Defendants," even though the stay does not apply to further proceedings against the Individual Defendants.[29]

---

[25]  *See* Conte Declr., Ex. 1 at ECF Nos. 385, 386.

[26]  *Id.* at ECF No. 388.

[27]  *Id.* at ECF No. 389.

[28]  Conte Declr., Ex. 11, (Order on Barnes & Thornburg, LLP's Motion to Withdraw) at 2.

[29]  *See* Conte Declr., Ex. 1 at ECF No. 391.

25.    On October 8, 2021, Kimberly-Clark filed a reply to the *Plea of Stay* in the District Court seeking a determination that the District Court Action was not stayed to the extent that Kimberly-Clark sought (a) injunctive relief against the Debtors barring ongoing infringement, or (b) claims against the Individual Defendants.[30]

26.    On October 13, 2021, the District Court entered an order concluding that the automatic stay applies to claims against the Debtors, but not any claims against the Individual Defendants.[31]  However, the District Court further "defer[red] to its colleague on the Bankruptcy Court to make this determination [as to the scope of the stay against the Debtors] in the first instance," and invited Kimberly-Clark to seek relief from the automatic stay in this Court. Kimberly-Clark now files this Motion.[32]

27.    Prior to filing this Motion, Kimberly-Clark, through its counsel, proposed to the Debtors' counsel a briefing and hearing schedule that would allow this Motion and any motion the Debtors might file to extend the stay to the Individual Defendants to be heard the week of November 15th.  Kimberly-Clark's counsel made this proposal on October 15th, and followed up by email this week.  The Debtors' counsel never responded to Kimberly-Clark's proposal to set an orderly briefing schedule.  Accordingly, Kimberly-Clark respectfully requests that this Court, subject to its availability, set a hearing on this Motion for the week of November 15th, along with a reasonable briefing schedule, so that the District Court can address the merits of the IP Dispute before the Debtors sell products that violate Kimberly-Clark's property rights and thereby generate massive administrative claims in the Chapter 11 Cases.

---

[30]  *Id.* at ECF No. 394.

[31]  *Id.* at ECF No. 396.

[32]  *Id.*

**RELIEF REQUESTED**

28.    By this Motion, Kimberly-Clark seeks entry of an order:  (a) dismissing the Chapter 11 Cases for "cause," pursuant to section 1112(b) of the Bankruptcy Code, or, in the alternative (b) granting relief from the automatic stay for "cause" pursuant to section 362(d) of the Bankruptcy Code, so that the District Court Action can determine the IP Dispute on the merits.

29.    Kimberly-Clark further requests a waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3), such that any relief granted under subsection (b), above, is effective immediately upon entry of the order granting relief.

**BASIS FOR RELIEF REQUESTED**

**A.    Cause Exists To Dismiss The Chapter 11 Cases Pursuant To Section 1112(b) Of The Bankruptcy Code Because They Were Filed In Bad Faith**

30.    The Bankruptcy Code provides that a court "shall convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."  11 U.S.C. § 1112(b)(1).  Bankruptcy Code section 1112(b)(4) states that "cause" includes sixteen different examples of "cause."  The list in Section 1112(b)(4) is not intended to be "exhaustive." *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984); *Synovus Bank v. Brooks (In re Brooks)*, 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013); *see also* 11 U.S.C. § 102(3).  It is well settled in the Eleventh Circuit that "a debtor's lack of good faith constitutes cause for dismissal of a case . . . ."  *E.g.*, *In re Asanda Air II LLC*, 600 B.R. 714, 721 (Bankr. N.D. Ga. 2019) (quoting *In re Double W. Enters.*, 240 B.R. 450, 453 (Bankr. M.D. Fla. 1999)); *see also Phx. Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir. 1988) *abrogated on other grounds*.[33]

---

[33]  Courts generally refer to a "lack of good faith" and "bad faith" synonymously.  *See, e.g.*, *In re Asanda Air II LLC*, 600 B.R. at 721; *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394.  This Motion does the same.

31.     Determining whether a bankruptcy petition was filed in good faith "is a question of fact and must be made on a case-by-case basis." *In re Asanda Air II LLC*, 600 B.R. at 721. However, in analyzing "a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." *In re Albany Partners, Ltd.*, 749 F.2d at 674.

32.     Courts generally weigh multiple factors in assessing whether a bankruptcy petition has been filed in bad faith, "including:  whether the debtor has few or no unsecured creditors; whether there was no pressure from non-moving creditors; whether the reorganization essentially involves the resolution of a two party dispute; and whether the debtor filed the petition solely for the creation of the automatic stay." *In re Asanda Air II LLC*, 600 B.R. at 721.  In addition, courts have considered whether the debtor has "few employees," and whether "[t]he timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts" of the moving creditor to enforce its rights. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394–95. *All* of these factors support a finding that the Debtors lacked good faith in commencing these Chapter 11 Cases. The facts of these cases demonstrate that these Chapter 11 Cases were filed solely as a "litigation tactic" in connection with the pending District Court Action, thereby dictating dismissal for cause under section 1112(b). *See, e.g.*, *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988); *In re Moog*, 159 B.R. 357, 360–61 (Bankr. S.D. Fla. 1993).

(1)     <u>The Sole Purpose of These Chapter 11 Cases Is to Stay the District Court Action So That the Debtors Can Profit From Future Infringement and Misappropriation of Kimberly-Clark's Intellectual Property and Trade Secrets.</u>

33.     Courts routinely dismiss chapter 11 cases for being filed in bad faith when their commencement is principally aimed at frustrating the resolution of prepetition litigation claims in a two-party dispute. *In re Serfass*, 325 B.R. 901, 906 (M.D. Fla. 2005) ("Generally, the courts do

not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case."); *In re HBA East, Inc.*, 87 B.R. at 260 ("Chapter 11 petitions filed for the purpose of frustrating the legitimate processes of a non-bankruptcy forum constitute use of the reorganization vehicle inconsistent with the congressional intent.") (citing *In re Martin*, 51 B.R. 490, 495 (Bankr. M.D. Fla. 1985)).  Accordingly, filing a chapter 11 case simply to realize the benefits of the automatic stay "is not *per se* a valid justification for a Chapter 11 filing; rather, it is a consequential benefit of an otherwise good faith filing."  *In re HBA East, Inc.*, 87 B.R. at 262 (citing *In re Herndon Executive Center, Inc.*, 36 B.R. 803, 806 (Bankr. M.D. Fla. 1984)).

34.     The court's decision in *In re HBA East, Inc.*, 87 B.R. 248, is instructive, and has been cited favorably in this Circuit.  *See In re Double W Enters., Inc.*, 240 B.R. at 455; *In re Moog*, 159 B.R. at 360–61.  In *HBA East*, two entities in the business of promoting boxing matches and professional fighters filed for chapter 11 protection on the eve of the deadline to answer a complaint in state court litigation commenced against them by former partners.  *In re HBA East, Inc.*, 87 B.R. at 250.  At the request of the debtors' former partners, the bankruptcy court dismissed the chapter 11 filings for being filed in bad faith.  In doing so, the bankruptcy court made two findings that are directly relevant here.

35.     *First*, the bankruptcy court found that "Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others . . . ."  *Id.* at 260; *see also id.* ("As one court succinctly put it, '[t]he automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation.'") (quoting *Furness v. Lilienfield*, 35 B.R. 1006, 1009 (D. Md. 1983)).  The court found that the "Debtors' problems are intrinsically

15

interwoven with their disputes with Movants and cannot be cured absent their favorable resolution," and that the debtors' "Chapter 11 petitions were filed for that purpose." *Id.*

36. *Second*, the bankruptcy court found it relevant that the debtors' only assets of significant value were boxing promotional contracts, and that their "ownership and control [were] vigorously disputed by Movants." *Id.* at 261. This provided another basis for finding that the debtors' cases were filed in bad faith. Specifically, the court found that "[t]he existence of disputes or contingencies relating to a debtor's only possible significant assets constitutes basis for dismissal of a Chapter 11 petition as not being filed in good faith." *Id.*

37. Judge Drake employed similar reasoning in dismissing the chapter 11 case in *In re Asanda Air II LLC*, 600 B.R. 714. In *Asanda*, Delta Air Lines, Inc. ("**Delta**") commenced a state court proceeding against Asanda Air II LLC ("**Asanda**") seeking a judicial determination that Delta had terminated its agreement with Asanda. *Id.* at 718. Asanda filed a chapter 11 petition prior to its deadline to answer in the state court proceeding, and Delta subsequently moved to dismiss the chapter 11 case as having been filed in bad faith. *Id.* The bankruptcy court found that "this reorganization essentially involves the resolution of a two-party dispute." *Id.* at 722. Specifically, the court found that "[t]he case in its entirety depends on the resolution of the dispute between Delta and the Debtor, as the Debtor's 'financial problems' stem solely from the State Court Proceeding and the underlying contract dispute with Delta." *Id.* Based on this and other factors demonstrating that Asanda filed its chapter 11 petition for a tactical advantage in a two-party dispute, the court dismissed the chapter 11 filings for being filed in bad faith.

38. The Debtors' purpose for filing these Chapter 11 Cases does not appear to be in dispute and demonstrates their bad faith. The Debtors commenced the Chapter 11 Cases solely to take advantage of the automatic stay to avoid the consequences of its failure to comply with the

District Court's September 15th order, and to prevent the District Court from ruling on the merits of the IP Dispute and enjoining their ongoing infringement.[34]  The timing of the Chapter 11 Cases proves the Debtors' bad faith.  Defendants knew of their prior counsel's intention to withdraw as early as July 2021, and the District Court decided that October 6th constituted a reasonable period of time to engage replacement counsel.  Rather than complying with the District Court's ruling or seeking additional time from the District Court, the Debtors filed for bankruptcy on the eve of the District Court's imposed deadline.  Moreover, the District Court Action has been pending for three (3) years and the deadline for filing dispositive motions in the District Court Action was November 1, 2021 (*i.e.*, less than a month after the petition date).  The commencement of these Chapter 11 Cases so close to the deadline for finding replacement counsel and for filing dispositive motions evidences an attempt to "frustrate the legitimate efforts" of Kimberly-Clark to finally obtain the relief it deserves in the District Court Action.  *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1395.

39.    Moreover, the Debtors have not identified any tool of the Bankruptcy Code, other than the automatic stay, that is necessary to implement a restructuring.  Rather, the Debtors' strategy is for their principals to attract "over $120 million in funding" for a non-debtor "startup," which will then "place an order with the Debtors for millions of dollars in machinery . . . ." Debtors' Employee Motion [D.I. 11], ¶ 2.  Such "machinery," however, is at the heart of the pending District Court Action—it infringes on Kimberly-Clark's patent and is the product of misappropriated trade secrets.  Such "disputes or contingencies relating to [the D]ebtor's only possible significant assets"—its infringing technology—evidence the Debtors' bad faith in filing these Chapter 11 Cases.  *See In re HBA East, Inc.*, 87 B.R. at 261.  The Debtors have commenced

---

[34]  *See* Stay Relief Motion [D.I. 19], pp. 9–10 ("Kimberly-Clark is attempting an end run around the automatic stay in hopes that it can use the Debtors' current unrepresented status to obtain a judgment by default. In the interest of the estates and their legitimate creditors, this Court should exercise its jurisdiction to enforce the automatic stay and allow the Debtors to reorganize.")

these cases to delay a resolution of the District Court Action, and have unequivocally stated that while the District Court Action is stayed they intend to market the infringing products that are at the core of the IP Dispute.  Debtors' Employee Motion [D.I. 11], ¶ 2.

40.    These factors evidence the Debtors' commencement of these Chapter 11 Cases merely as a litigation tactic, and weigh heavily in favor of dismissing these cases for cause.

(2)    The Debtors Do Not Have Significant Creditors That Warrant the Protections of Chapter 11.

41.    In determining whether a chapter 11 filing is filed in good faith, courts also look to "whether the debtor has few or no unsecured creditors," and "whether there was no pressure from non-moving creditors" prior to the filing of a voluntary petition.  *In re Asanda Air II LLC*, 600 B.R. at 721.  Both of these factors support dismissal of these Chapter 11 Cases.

42.    The Debtors' own filings make clear that they "do not have any significant secured financing."  Debtors' Employee Motion, ¶ 6.  Further, the Debtors' voluntary petitions identify only fourteen (14) unsecured creditors among all of the Debtors.  Of those creditors, two (2) are Kimberly-Clark entities, eight (8) appear to be professionals retained in connection with the District Court Action, and one (1) is an independent contractor that it appears the Court authorized the Debtors to pay in full.  This leaves only three (3) remaining unsecured creditors, owed a total of $4,005 in non-disputed, liquidated unsecured claims, and one larger disputed unsecured claim. The Debtors' first day filings do not indicate any pressure by any of these creditors that would require the Debtors to seek the protections or tools of chapter 11.  In fact, only two of the Debtors' creditors have even filed Notices of Appearance in these Chapter 11 Cases:  (i) Kimberly-Clark [D.I. 13]; and (ii) Barnes & Thornburg LLP, the Debtors' prior counsel in the District Court Action [D.I. 24].  These factors further evidence that these Chapter 11 Cases are a two-party dispute between the Debtors and Kimberly-Clark.

18

(3)      The Debtors Have Few Employees.

43.      Further weighing in favor of dismissal is the fact that the Debtors have "few employees." *E.g.*, *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394.   Excepting the Debtors' principals, the Debtors employ "one full-time employee (who is leased from a professional employment organization) and one part-time independent contractor . . . ."  Debtors' Employee Motion, ¶ 10.  The Debtors do not have a substantial operation around which to reorganize.

44.      In sum, the Debtors' own filings in these Chapter 11 Cases demonstrate that the Debtors' bankruptcy filings were filed solely as a litigation tactic in a two-party dispute, and not for any valid restructuring purpose.  This constitutes bad faith and cause for dismissal of the Debtors' Chapter 11 Cases pursuant to Bankruptcy Code section 1112(b).

**B.      In The Alternative To Dismissal, The Court Should Grant Kimberly-Clark Relief From The Automatic Stay Based On The Debtors' Bad Faith Filing**

45.      Cause exists to dismiss the Debtors' Chapter 11 Cases as having been filed in bad faith.  However, in the event the Court does not grant such relief, Kimberly-Clark respectfully requests relief from the automatic stay so that the District Court can finally determine the IP Dispute.  Section 362(d)(1) of the Bankruptcy Code provides that the Court may terminate or otherwise modify the automatic stay "for cause."  The Bankruptcy Code does not define "cause," and, as a result, the decision to lift the automatic stay is determined at the Court's discretion on a case-by-case basis.  *See Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277 (11th Cir. 2013).

46.      To aid in the exercise of that discretion, courts have identified various indicators of "cause," including, as relevant here, a bankruptcy petition being filed in bad faith and pending litigation in other forums.  *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394 ("An automatic stay may be terminated for 'cause' pursuant to section 362(d)(1) of the Bankruptcy Code if a

petition was filed in bad faith."); *Schuler v. Sandalwood Nursing Ctr., Inc. (In re Sandalwood Nursing Ctr., Inc.)*, 2018 WL 4057234, at *4 (Bankr. N.D. Ga. Aug. 23, 2018) ("Section 362(d)(1) provides relief from such stay 'for cause,' such as pending litigation against a debtor in a non-bankruptcy forum.").

47.     The circumstances surrounding the filing of these Chapter 11 Cases evidence the Debtors' bad faith, thereby establishing cause for dismissal under Bankruptcy Code section 1112(b). "Bad faith" that constitutes "cause" is the same under sections 1112(b) and 362(d)(1) of the Bankruptcy Code. *See Double W Enters.*, 240 B.R. at 453. Accordingly, Kimberly-Clark respectfully submits that, in the absence of dismissal, such bad faith constitutes "cause" for relief from the automatic stay, and the automatic stay should be terminated pursuant to section 362(d)(1).

**C.     Kimberly-Clark Is Entitled To Stay Relief Due To Its Pending District Court Action**

48.     Even if this Court were to conclude that the Chapter 11 Cases were not filed in bad faith, there would still be "cause" to terminate the automatic stay, because the District Court is the forum that must decide the IP Dispute. The District Court Action has been pending for three (3) years. Fact and expert discovery have been completed, and the District Court has set a deadline to file dispositive motions. Further, only the District Court can resolve the IP Dispute as between Kimberly-Clark and the Individual Defendants. This Court has no jurisdiction to decide disputes by one nondebtor (Kimberly-Clark) against other nondebtors (the Individual Defendants). *In re AstroTurf, LLC*, 2017 WL 3889710, at *20 (Bankr. N.D. Ga. Sept. 15, 2017) (" [A] bankruptcy court is not a proper place for the resolution of private disputes between nondebtor parties. . . ."); Nor can this Court conduct the jury trial to which the parties are entitled. *See In re Miles*, 477 B.R. 266, 272 (Bankr. N.D. Ga. 2012) (discussing Local Bankruptcy Rule 9015-3). *See also* 28 U.S.C. § 157(e). The IP Dispute does not involve any issues of bankruptcy law and is within the expertise

of the District Court.  Finally, resolution of the IP Dispute by the District Court should not be

delayed, as it is necessary to determine whether the Debtors can be permitted to pursue their

intended path (i.e., selling products that Kimberly-Clark contends infringe), and prevent the harm

from the Debtors' and the Individual Defendants' continued bad acts.

(1)    <u>Relief From Stay Is Warranted So the IP Dispute Can Be Resolved in the Pending
District Court Action.</u>

49.    When there is a pending proceeding in a non-bankruptcy forum, courts have

adopted a three-pronged test for determining whether the stay should be lifted for cause. *See*

*Egwineke v. Robertson (In re Robertson)*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000).  The factors

are:

> 1)    whether any great prejudice to either the bankruptcy estate
>        or the debtor will result from the prosecution of the lawsuit;
>
> 2)    whether the hardship to the non-debtor party by continuation
>        of the automatic stay considerably outweighs the hardship to
>        the debtor;
>
> 3)    whether the creditor has a probability of success on the
>        merits of [the] case.

*Id.*  Here, all three factors weigh in favor of lifting the automatic stay.

50.    *First*, lifting the automatic stay to permit the prosecution of the District Court

Action will not prejudice the Debtors.  Kimberly-Clark is seeking to continue the District Court

Action to obtain injunctive relief to prevent ongoing intellectual property theft by the Debtors, and

to liquidate (but not enforce) the amount of its claim.  While the Debtors have taken the position

that they should be entitled to the benefit of the automatic stay because they do not currently have

sufficient funds to continue their defense in the District Court Action,[35] case law is clear that the

---

[35] *See* Stay Relief Motion, pp. 9–10.

cost or inconvenience of defending pending litigation in a non-bankruptcy forum should *not* be regarded as "great prejudice" precluding relief from the automatic stay.  *See In re Dallas,* 2011 WL 6101832, at *2 (Bankr. S.D. Ga. Nov. 29, 2011) ("Debtor argues he does not have the resources to defend the action . . . [and] may be without the benefit of [] counsel . . . but the cost of defending, alone, is not a great prejudice.") (internal quotations omitted); *In re R.J. Groover Constr., LLC*, 411 B.R. 473, 479 (Bankr. S.D. Ga. 2008) (cost of defending litigation, by itself, is not a "great prejudice" barring relief from the stay); *Davis v. Day (In re Day)*, 2004 WL 2191632, at *2 (Bankr. S.D. Ga. Jan. 29, 2004) (same); *see also Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1143 (10th Cir. 1991) ("[N]o case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the [section 362] stay.") (internal citations omitted).

     51.     Furthermore, the District Court has presided over the District Court Action for three (3) years, discovery is complete, and dispositive motions are contemplated to be filed weeks after the Court's resolution of the instant Motion.  It granted the motion of the Defendants' prior counsel to withdraw as counsel and set a deadline for the Debtors to engage replacement counsel, all as part of controlling its docket and moving the District Court Action toward final resolution. The Debtors did not ask the District Court for relief from any of its orders; they filed these Chapter 11 Cases to evade the consequences of their failure to comply.  Under similar circumstances, courts have granted relief from the automatic stay to permit litigation to continue in a non-bankruptcy forum.  *See In re Dallas*, 2011 WL 6101832, at *3 ("[T]he Georgia court is already familiar with the pertinent facts and evidence of this controversy as discovery has been completed and currently a motion for summary judgment is pending before the court . . . I find neither the Debtor nor the bankruptcy estate will suffer great prejudice if the stay is lifted."); *In re Day*, 2004 WL 2191632 at *3 ("[I]t will often be more appropriate to permit proceedings to continue in their place of origin,

22

when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum.") (quoting S.Rep. No. 95–989 at 50 (1978)).

52.    Although the Debtors and the Individual Defendants are keen on delaying a resolution of the merits of Kimberly-Clark's patent infringement and trade secret misappropriation claims, allowing the District Court Action to proceed will provide greater certainty as to the Debtors' viability.  The Debtors assert that their reorganization hinges entirely on the sale of machinery that uses the same technology that is at issue in the District Court Action.  The faster the District Court is able to determine whether the Debtors are in fact violating Kimberly-Clark's rights and proprietary technology, the faster all parties and this Court will know whether the Debtors' proposed reorganization is viable.

53.    Granting relief from the automatic stay is also in line with the Debtors' rights under applicable law.  The Debtors have made clear that they intend to continue infringing on Kimberly-Clark's intellectual property.  *See* Debtors' Employee Motion [D.I. 11], ¶ 2.  It is well settled that "each act of patent infringement gives rise to a separate cause of action."  *See, e.g.*, *Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006).  Bankruptcy Code section 362(a) does "not impede a plaintiff's post-petition claim for damages" arising from patent infringement.  *Larami Ltd. v. Yes! Ent't Corp.*, 244 B.R. 56, 58 (D.N.J. 2000).  Nor does it impair a plaintiff's right to injunctive relief for postpetition infringement.  "If this section were read to prevent the injunctive relief [for postpetition patent infringement], bankrupt business which operated post-petition could violate patent rights with impunity."  *Id.* at 60.  Allowing Kimberly-Clark to continue prosecution of the District Court Action does not prejudice the Debtors, because the automatic stay does not prevent new causes of action for the Debtors' threatened postpetition infringement.

54.     Finally, granting such relief will also further the general preference that a bankruptcy court not consider the merits of patent infringement and other intellectual property claims when a pending district court action exists.  *See The Singer Co. N.V. v. Groz-Beckert KG (In re The Singer Co. N.V.)*, 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002) (granting motion to withdraw the reference in an action involving patent issues of implied licenses, claim construction, and infringement because resolution of the adversary proceeding required "substantial and material consideration of patent law"); *U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re National Gypsum Co.)*, 145 B.R. 539, 542 (N.D. Tex. 1992) (holding that withdrawal of the reference was required where the patent issues required "substantial and material consideration" of non-bankruptcy federal patent and antitrust law); *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 396 (N.D. Tex. 1992) (granting mandatory withdrawal of the reference for resolution of dispute over post-petition patent infringement).

55.     *Second*, the hardship to Kimberly-Clark by continuation of the automatic stay considerably outweighs any hardship to the Debtors.  Evidence unearthed through years of discovery in the District Court Action demonstrates that the Defendants engaged in conduct that gives rise to patent infringement and trade secret misappropriation claims.  The Debtors' past and continued bad acts threaten significant lines of Kimberly-Clark's business, and a resolution of these disputes should not be further delayed now that the District Court is on the precipice of resolving the merits of the IP Dispute.

56.     Kimberly-Clark should not be deprived of its day in court to litigate these issues against the Debtors.  As the United States Bankruptcy Court for the Southern District of Georgia has stated:

> Courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, despite the

24

> existence of a bankruptcy proceeding . . .   the automatic stay was
> never intended to preclude a determination of tort liability and the
> attendant damages.   Instead, it was merely intended to prevent a
> prejudicial dissipation of a debtor's assets.

*In re Dallas*, 2011 WL 6101832, at *3 (quoting *In re Day*, 2004 WL 2191632, at *3).  Here, lifting

the automatic stay will permit Kimberly-Clark to obtain a determination of the Debtors' liability,

and, because Kimberly-Clark is not seeking leave to enforce any money judgment outside of

bankruptcy, it will not result in any prejudicial dissipation of the Debtors' assets.  If the automatic

stay is not lifted, however, the Debtors will continue to engage in ongoing unlawful intellectual

property theft and cause continued harm to Kimberly-Clark.

57.   The Debtors should not be allowed to hide behind the automatic stay while they

simultaneously continue to engage in unlawful activity.   *See Bambu Sales, Inc. v. Sultana

Crackers, Inc.*, 683 F. Supp. 899, 917 (E.D.N.Y. 1988) ("The Bankruptcy Act was intended to

protect and rehabilitate debtors.  It should not be used as a shield behind which a debtor may

sustain the misappropriation of a trade name to which he is not rightfully entitled.  Nor will this

Court permit it to be used as an instrument by which the damages to an innocent party may be

increased unnecessarily."); *In re Highcrest Mgmt. Co.*, 30 B.R. 776, 778 (Bankr. S.D.N.Y. 1983)

("The automatic stay should not be used as a shield to protect conduct which can only be fully and

finally adjudicated in a case pending in the District Court.").  Here, the harm to Kimberly-Clark—

being deprived of the ability to have the IP Dispute finally resolved while the Debtors continue to

irreparably harm Kimberly-Clark through continued infringement and misappropriation of its

intellectual property—outweighs any hardship to the Debtors from proceeding with the District

Court Action.  Accordingly, the second factor weighs in favor of lifting the automatic stay.

58.   *Third*, Kimberly-Clark has a high probability of success on the merits.  The merits

of the underlying District Court Action are based on highly technical facts and depend on various

federal and state intellectual property laws (all the more the reason the Bankruptcy Court should not be burdened with having to determine them).

59.     Kimberly-Clark has obtained documents, testimony, and expert opinions that show the misappropriation of Kimberly-Clark's meltblowing and coform trade secrets.  As one example of the Debtors' blatant misconduct, the corporate representatives for the Debtors have admitted in a deposition that they stored in spreadsheets the confidential key variables used to design Kimberly-Clark's meltblowing dies so that they could select their own parameters based on Kimberly-Clark's trade secrets.  Other documents have shown the exact replication of Kimberly-Clark's trade secret coform process specifications in the manufacturing line sold to Qiaohong.

60.     Furthermore, on January 26, 2021, the District Court issued a claim construction order construing the claims of the '104 Patent, siding with Kimberly-Clark's positions on all disputed terms.[36]  This order was entered in response to a request by the Defendants, whereby they sought limitations on Kimberly-Clark's claims in the District Court Action that would foreclose the Defendants' liability for patent infringement.  The District Court rejected the Defendants' arguments—eliminating many of their defenses—and ensuring that a jury will have the right to hear evidence of the Defendants' infringement of Kimberly-Clark's patent.

61.     Moreover, the Debtors have now conceded the validity of Kimberly-Clark's '104 Patent, substantially narrowing their avenues to prevail in the IP Dispute.  On November 12, 2020, Debtors filed a petition for *inter partes* review of the '104 Patent at the Patent Trial and Appeal Board, seeking a determination that the patent is invalid.[37]  On May 12, 2021, the Patent Office denied consideration of the Debtors' petition, holding that the Debtors have "not established a

---

[36]  Conte Declr., Ex. 9.

[37]  Conte Declr., Ex. 12 (Petition for *Inter Partes* Review of U.S. Patent No. 6,972,104).

reasonable likelihood that [they] would prevail."[38]  Subsequently, the Debtors did not even submit an expert report in the District Court Action on the alleged invalidity of the '104 Patent.  Thus, Debtors are left solely with *already rejected* defenses to infringement (*see* District Court *Markman* Order) as a last-ditch effort to avoid the issuance of an injunction with regard to all prior and prospective sales of "their" meltblowing dies.

62.     Because the District Court is the proper forum for Kimberly-Clark's claims against the Debtors and the Individual Defendants and time is of the essence precisely because the Debtors have stated they intend to sell infringing machinery while hiding behind the automatic stay, cause exists to grant relief from the automatic stay.

(2)     The *Curtis* Factors Also Weigh In Favor of Granting Relief From Stay

63.     Bankruptcy courts in this and other circuits have also considered the following factors (the "***Curtis* Factors**") in determining whether cause exists to lift the automatic stay:

1)    whether relief would result in partial or complete resolution of the issues;

2)    lack of any connection with or interference with the bankruptcy case;

3)    whether the other proceeding involves the debtor as a fiduciary;

4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5)    whether the debtor's insurer has assumed full responsibility for defending it;

6)    whether the action primarily involves third parties;

7)    whether litigation in another forum would prejudice the interests of other creditors;

---

[38]  Conte Declr., Ex. 13 (Denying Institution of *Inter Partes* Review).

8)    whether the judgment claim arising from the other action is subject to equitable subordination;

9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

11)    whether the parties are ready for trial in the other proceeding; and

12)    impact of the stay on the parties and the balance of harms.

*See In re Sandalwood Nursing Ctr., Inc.*, 2018 WL 4057234, at *4 (applying *Curtis* Factors); *Sonnax Ind., Inc. v. Tri Component Prods. Corp. (In re Sonnax Ind., Inc.)*, 907 F.2d 1280, 1286 (2nd Cir. 1990) (same). Not all of the twelve *Curtis* Factors are relevant in every case, and courts may afford different weights to various factors. *Sandalwood*, 2018 WL 4057234, at *5  Here, the *Curtis* Factors decisively weigh in favor of granting relief from stay.

64.    <u>Complete Resolution of the Issues</u>. Lifting the automatic stay will allow the District Court to make a determination on the complex and highly technical intellectual property issues between Kimberly-Clark and the Debtors in the District Court Action and ultimately result in a complete resolution of the underlying issues. This Court cannot determine the merits of the claims against the Individual Defendants and cannot conduct the jury trial to which the parties are entitled. Only the District Court can grant complete relief. *Cf. In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001) (exploring res judicata effects of chapter 11 plan on subsequent litigation between nondebtors).

65.    <u>Lack of Connection or Interference with the Chapter 11 Cases</u>. The District Court Action is not connected to these Chapter 11 Cases. The patent infringement, trade misappropriation, and breach of contract claims Kimberly-Clark asserts in the District Court

Action do not involve any substantive right under the Bankruptcy Code. *See In re Davis*, 899 F.2d 1136, 1140–41 (11th Cir. 1990) ("If the proceeding does not involve a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.").

66.    Where, as here, non-bankruptcy legal issues predominate, bankruptcy courts have favored lifting the automatic stay to permit litigation in the non-bankruptcy forum. *See, e.g.*, *In re Burger Boys, Inc.*, 183 B.R. 682, 685–89 (S.D.N.Y. 1994) (finding that adversary proceeding to recover damages for alleged abandonment of leased premises was a non-core proceeding and lifting automatic stay to allow for action to proceed in state court); *In re People's Choice Home Loan*, 2007 WL 9637067, at *7–8 (Bankr. C.D. Cal. Oct. 29, 2007) (lifting stay in part because litigation was pending in state court and concerned matters of state law); *In re Jotan, Inc.*, 232 B.R. 503, 505–08 (Bankr. M.D. Fla. 1999) (lifting the automatic stay to allow arbitration of non-core matters between Debtors and third parties to proceed).

67.    Furthermore, the District Court Action will not interfere with these Chapter 11 Cases.  As set forth herein, Kimberly-Clark is not seeking relief from the automatic stay to collect from the Debtors any money judgment it may be awarded in the District Court Action outside the claims process in these Chapter 11 Cases.  Rather, it seeks a determination of whether the Debtors are, in fact, infringing or misappropriating Kimberly-Clark's patents and trade secrets, and to liquidate any claims on account thereof and enjoin any further wrongful conduct.  If the Debtors are to continue as a going concern, these disputes must be resolved regardless of whether the Debtors are in chapter 11 or not.

68.    <u>Specialized Tribunal</u>.  The District Court is subject to the jurisdiction of specialized tribunals.  Notably, any appeal of the patent claims in the District Court Action would be heard by the Federal Circuit. 28 U.S.C. § 1295(a)(1).

69.    <u>District Court Action Will Not Prejudice Other Creditors</u>.  Other creditors will not be prejudiced by lifting the automatic stay because collection from the Debtors of any money judgment on account of such claims will be determined by the Bankruptcy Court presiding over these Chapter 11 Cases.  Other creditors and this Court need to know whether the Debtors are infringing, as Kimberly-Clark alleges, because if they are continuing to violate Kimberly-Clark's rights post-petition, they are generating massive administrative priority claims that would have to be paid ahead of unsecured creditors.

70.    <u>The Interests of Judicial Economy and Expeditious and Economical Determination of Litigation for the Parties</u>.  The IP Dispute involves questions of patent infringement and trade secret misappropriation.  The faster such issues are resolved, the better it will be for the Debtors, their creditors, and Kimberly-Clark because it will clarify whatever rights (if any) the Debtors have to continue making and selling their "machines" at issue.  Furthermore, the Bankruptcy Court is not the proper forum to litigate the specialized intellectual property issues that predominate the District Court Action.  *See supra*, ¶ 54.

71.    It is fundamentally more efficient for the District Court to finally resolve the IP Dispute for many reasons, including the fact that it has been pending for three (3) years, all discovery has been completed and the District Court is familiar with the issues, having already completed the *Markman* hearing, and the District Court has jurisdiction to resolve the IP Dispute as to all Defendants.  *See In re Sandalwood Nursing Ctr., Inc.*, 2018 WL 4057234, at *5 ("[I]t appears that the interests of judicial economy and expeditious resolution of the Claim cut in favor

30

of lifting the stay. The litigation involving the Claim has been pending for nearly two and one half (2 1/2) years . . . Significant time and resources have likely been expended on litigating the Claim . . . [and] the Claim cannot be liquidated here.")

72.     <u>The Parties Are Ready for Trial in the District Court Action</u>.  The parties have completed extensive fact and expert discovery, and absent the commencement of these Chapter 11 cases, dispositive motions would be filed on November 1, 2021, with a trial to be scheduled after rulings on those motions.  In order to provide the Court time to rule on the instant Motion, Kimberly-Clark has consensually extended that filing deadline to six (6) weeks after a ruling by this Court.  Accordingly, the District Court Action is in advanced stages, which weighs in favor of lifting the automatic stay.

73.     <u>Impact of the Stay on the Parties and Balance of Harms</u>.  Kimberly-Clark continues to be harmed by the Debtors' ongoing, postpetition infringement and misappropriation, with no recourse to stop such harm unless the Court grants relief from the automatic stay to permit the District Court to proceed with the District Court Action.  In *Voice Systems & Services, Inc. v. VMX, Inc.*, 1992 WL 510121, at *10–11 (N.D. Okla. Nov. 5, 1992), a district court granted a preliminary injunction enjoining further patent infringement by a debtor in bankruptcy, after the debtor's petition was filed.  In support of its ruling, the district court expressly rejected the debtor's contention that section 362(a) barred such relief and recognized that the debtor's financial distress—as demonstrated by the bankruptcy filing—constituted compelling evidence that the debtor would be unable to pay damages to compensate for the harm caused by its ongoing post-petition infringement.  *Id.* at 7.  The same is true in the present case.  The only resulting prejudice in lifting that stay that has been articulated by the Debtors is that they allegedly do not have sufficient funds to hire counsel to defend the District Court Action, which is not recognized as

31

sufficient prejudice to preclude lifting of the automatic stay. *See, e.g.*, *In re Dallas*, 2011 WL 6101832, at *2.

## D.    If Applicable, The 14-Day Stay Should Be Waived

74.    To the extent the Court decides that relief from the automatic stay is more appropriate than dismissal, Kimberly-Clark further requests a waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3), which provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Bankruptcy Rule 4001 does not provide the grounds for a waiver of stay; thus, granting a waiver is within the Court's discretion. *See, e.g.*, *In re Taub*, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (waiving the 14-day stay and noting, "[d]elay and expense, and the prospect of irreparable damage, are far more likely to result if the effective date of this Court's Order is stayed than if it is immediately effective."). Based on a schedule agreed to by the Debtors, their principals, and Kimberly-Clark, the District Court has set the deadline for dispositive motions six (6) weeks after the Court rules on this Motion. Staying any order could impact the agreed and court-ordered schedule for re-commencing the District Court Action, should relief from stay be granted. Moreover, as set forth above, each passing day in which the Debtors continue to infringe and misappropriate Kimberly-Clark's intellectual property causes irreparable harm to Kimberly-Clark. Therefore, Kimberly-Clark respectfully submits that a waiver of the 14-day stay (if applicable) is warranted under the circumstances to permit the District Court Action to proceed as expeditiously as possible on its currently contemplated schedule.

## <u>CONCLUSION</u>

**WHEREFORE**, Kimberly-Clark respectfully requests entry of an order (i) dismissing the Chapter 11 Cases "for cause," pursuant to section 1112(b) of the Bankruptcy Code; or, in the alternative, (ii) granting to Kimberly-Clark (A) relief from the automatic stay "for cause," pursuant to section 362(d)(1) of the Bankruptcy Code, such that Kimberly-Clark can litigate to a judgment in the District Court Action, and (B) a waiver of the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3); and (iii) Granting to Kimberly-Clark such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 22, 2021


Respectfully submitted,

*/s/ Nathaniel T. DeLoatch*
James A. Lamberth (Ga. Bar No. 431851)
Harris B. Winsberg (Ga. Bar No. 770892)
Nathaniel T. DeLoatch (Ga. Bar No. 216330)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street,
NE Suite 3000
Atlanta, GA 30308
(404) 885-3362
james.lamberth@troutman.com
harris.winsberg@troutman.com
nathan.deloatch@troutman.com

-and-

Jeffrey C. Krause (pro hac vice)
Michael Neumeister (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
jkrause@gibsondunn.com
mneumeister@gibsondunn.com

John G. Conte, Esq. (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000
jconte@gibsondunn.com

*Attorneys for Creditors Kimberly-
Clark Corporation and Kimberly-
Clark Global Sales, LLC*