**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| In Re: | **CASE NO. 21-21053-JRS** |
| **EXTRUSION GROUP, LLC, *et al,*[1]** | **CHAPTER 11** |
| **Debtors.** | **Jointly Administered for Procedural Purposes Only** |

**DEBTORS' RESPONSE TO MOTION OF KIMBERLY-CLARK
CORPORATION AND KIMBERLY-CLARK GLOBAL SALES, LLC
FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11 CASES OR, IN
THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtors (collectively, the "**Debtors**" or "**Extrusion Group**") file this Response in Opposition to Motion for Entry of an Order Dismissing Chapter 11 Cases or, in the Alternative, Granting Relief from the Automatic Stay (the "**Dismissal Motion**") filed by Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (collectively, "**Kimberly-Clark**"), respectfully showing the Court as follows:

<u>INTRODUCTION</u>

Less than three weeks after the petition date, Kimberly-Clark filed the Dismissal Motion, with the obvious goal of terminating the automatic stay so it can obtain default judgments against the Debtors and put them out of business.  Make no mistake—Kimberly-Clark is not a creditor seeking to collect a debt—it is a competitor seeking to flex its muscle to destroy competition and obtain or maintain a monopoly, which is the antithesis of the competitive bedrock of capitalism.

The overriding theme of the Dismissal Motion is that the Debtors are supposedly intellectual property thieves who must be stopped immediately and that Kimberly-Clark is the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

innocent victim of their purported thievery.  However, these assertions beg the question that is currently before the District Court: whether any misappropriation has actually occurred. This is a question that the Debtors believe will be answered in their favor if they are actually allowed to have their day in court (which Kimberly-Clark obviously does not want to happen).

The entire Dismissal Motion is based on circular logic, namely that these bankruptcy cases should be dismissed based on allegations that have not been proven yet, with numerous factual allegations related to the pending litigation.  In order to rule in Kimberly-Clark's favor, this Court would essentially need to decide the main issues underlying the entire litigation (which Kimberly-Clark argues repeatedly in its Dismissal Motion that this Court cannot do). Notably, Kimberly-Clark has already tried and failed to obtain a temporary restraining order in the District Court, and now essentially seeks relief here that it could not get there.

Kimberly-Clark contends that the Debtors' Chapter 11 cases were filed for the improper purpose of staying a lawsuit brought by Kimberly-Clark against Debtors and two individual principals of the Debtors, Micheal Houston and Michael Cook, in the U.S. District Court for the Northern District of Georgia (the "**District Court Case**"),[2]  in order to prevent Kimberly-Clark from having its day in court (which would involve an unopposed win by default).

In reality, as the Debtors testified at their Rule 341 meeting of creditors in this case, the Debtors' driving reason for filing for chapter 11 protection was that they have incurred enormous expenses that exceed their assets, which have strangled Debtors' ability to pay their creditors and continue to conduct an otherwise viable business.  Most, but not all, of those expenses have been incurred as legal fees and expenses associated with their defense in the District Court Case, which has involved scorched-earth litigation tactics by Kimberly-Clark over the course of three years.

---

[2] The case is Civil Action File No. 1:18-cv-04754-SDG.

Contrary to Kimberly-Clark's assertions, providing Debtors with stay protection will not rob Kimberly-Clark of its day in court, rather it will ensure there is a full and fair resolution to that case after Debtors have had the opportunity to reorganize and proceed with their defense.

The Debtors should be entitled to that opportunity. There is no emergency necessitating the immediate adjudication of the claims in the District Court Case. The Debtors are insolvent with more than $4 million in unsecured debt. They face significant pressure from their creditors. And this case was filed for the legitimate purpose of seeking a reorganization that will allow Debtors to preserve their assets, pay their creditors, and continue to conduct their businesses.

### CLARIFICATION OF FACTS

Kimberly-Clark's recitation of the background facts relevant to this motion is misleading. In the Dismissal Motion, Kimberly-Clark's recounting of the actual history between these parties is conveniently sparse. Kimberly-Clark's summary suggests that Kimberly-Clark filed the District Court Case urgently to enjoin Debtors from selling to an overseas competitor equipment and products that allegedly incorporate Kimberly-Clark's trade secrets and infringe upon its patents. It leaves out events that occurred nearly a decade before, when Kimberly-Clark initially learned that Debtors were developing their own products to compete with Kimberly-Clark's "meltblown" technology and "coform" manufacturing process, even observing an early prototype of the now-controversial "meltblown die tip" Mr. Cook created, but took no action.

Kimberly-Clark's characterization of the events of the District Court Case emphasizes not the merits of their case, but a few discovery disputes, already adjudicated by the District Court, to suggest a generalized malfeasance on the part of Debtors that Kimberly-Clark hopes will taint the Court's view of the Debtors in these proceedings. That history is inaccurately depicted by Kimberly-Clark but irrelevant here. The issues before this Court do not include whether the

Debtors produced all the documents demanded of them in the District Court Case, when Kimberly-Clark demanded them; they involve whether Debtors are entitled to a meaningful opportunity to reorganize under Chapter 11 in this Court.

Mr. Cook, the first of Debtors' principals to leave Kimberly-Clark Corporation, began designing his own meltblown die tip to be used in the manufacture of nonwoven materials before any of the Debtors existed. In 2010, he displayed and demonstrated his meltblown die tip at the IDEA 2010 Miami trade show. Dr. Bryan Haynes, one of Kimberly-Clark's top research and design executives, observed and discussed that design with Mr. Cook at the show. Kimberly-Clark took no action at that time. It waited seven years to make further inquiry. [Doc. 40 ¶ 15.]

In late 2018, after learning that Debtors were primed to compete with them, Kimberly-Clark filed the 145-page complaint against the Debtors and several of its principals to initiate the District Court Case, accusing them of trade secret misappropriation, patent infringement, and other purported harms. [Dist. Ct. Doc. 1.] Kimberly-Clark has tried and failed twice now to shut down the Debtors with early injunctive relief. They have also significantly revised their claims upon determining, after protracted litigation, that their initial theories had no merit. [Dist. Ct. Doc. 156, 168, 184.]

Indeed, Kimberly-Clark has been remarkably unsuccessful in prosecuting the District Court Case, which the Debtors' pre-petition litigation counsel aptly dubbed a "trade secret case that's looking for a trade secret." [Dist. Ct. Doc. 162-1 at 42:19-20.]

Kimberly-Clark sought expedited discovery at the outset of the District Court Case in an unsuccessful attempt to obtain evidence to support a preliminary injunction. [Dist. Ct. Doc. 5.] The district court denied that motion on the basis that Kimberly-Clark had failed to demonstrate an emergency. [Dist. Ct. Doc. 43, Thrash, J.] The Court heard argument that Kimberly-Clark had

-4-

the information upon which it based its claims for at least 10 months before filing its Complaint, and that Kimberly-Clark's knowledge of many of the relevant facts dated back many years before the 2018 Complaint was filed. [*Id*.]

Thereafter, on May 3, 2019, Kimberly-Clark sought a temporary restraining order to prevent Extrusion Group from selling its MultiForm™ machine to its Chinese customer, Nanning Qioahong. [Dist. Ct. Doc. 62.] In seeking the temporary restraining order, Kimberly-Clark admitted it could not show a likelihood of success on the merits based on evidence but asked the District Court to make an inference of that likelihood based on an alleged failure to produce certain documents, particularly design drawings of the machine. [Dist. Ct. Doc. 62, 162 at 21-22.]

Extrusion Group's pre-petition litigation counsel argued that Kimberly-Clark had been given a full set of the relevant design drawings and Extrusion Group's process manuals and, while some of drawings had not been shared, the relevant information as to that aspect of the machine is in the public domain anyway. [Dist. Ct. Doc. 162 at 24-25.] He further argued that Kimberly-Clark had taken the opportunity to inspect the fully-assembled machine before filing the motion, and yet Kimberly-Clark's motion contained no evidence of misuse of patented technology or trade secrets. [Dist. Ct. Doc. 162 at 26-32.]

Indeed, Kimberly-Clark did not even argue that there was infringement/ misappropriation, only that five elements of the machine were "similar" to Kimberly-Clark intellectual property— all of which is in the public domain, with most of it placed there by Kimberly-Clark itself. [*Id*.] He noted that the specific issues Kimberly-Clark had been complaining of from the beginning are not even subjects of Kimberly-Clark's case now. [*Id*.] In fact, Extrusion Group believes that the whole case is based on Kimberly-Clark testing some nonwoven material that Kimberly-Clark

mistakenly believed to have been manufactured by Extrusion Group—when in fact it was likely Kimberly-Clark's own nonwoven material.  [*Id*.]

The District Court denied Kimberly-Clark's request for a temporary restraining order, stating that Kimberly-Clark had not shown sufficient likelihood of success on the merits and finding that there was no showing of irreparable harm.  The District Court found that the other two factors, the public interest and balance of the harms, were even between the parties, noting as follows: "If . . . the plaintiff can't make out its case as the defendant contends, . . . then the public is harmed because the plaintiff is maintaining an improper monopoly based upon public domain process rather than legitimate trade secrets." [Dist. Ct. Doc. 88, Thrash, J.]

In November 2019, Kimberly-Clark moved to amend its Complaint, dropping all of its initial claims about patent infringement and asserting new claims of infringement of an entirely separate patent.  [Dist. Ct. Doc. 158.]  Debtors dispute any infringement of either patent.

Both fact discovery and expert discovery in the district court case have since concluded and Kimberly-Clark never moved for a preliminary injunction in the meantime.

In the Dismissal Motion, Kimberly-Clark notes that it learned during discovery that Debtors have redesigned the meltblowing dies they sell to ensure they do not infringe on Kimberly-Clark's construction of its patent.  [Doc. 40 ¶ 21.]  Because that information was, allegedly, withheld from Kimberly-Clark during discovery, the Debtors have been barred from presenting evidence of the new die design in the District Court Case and any decision coming in the case will relate exclusively to the earlier design.  [*Id*.]  This means that ***the issues before the District Court as to the meltblowing dies relate only to past sales of such dies by the Debtors, not future ones***. Debtors' current meltblown die is not on trial, and there is no emergency with respect to any imminent infringement as Kimberly-Clark repeatedly alleges in the Dismissal Motion.

Moreover, even if the Debtors were to sell any meltblown equipment, the lead time for delivery of such equipment is at least a year. Any purchaser would likely require several months to install the equipment, start production, and qualify the manufactured material for sale.

The potential buyer that has been the prime focus of these proceedings thus far, Aero Nonwovens, a young company started by some of Debtors' own principals, would have to first build a very large facility in which to house the MultiForm™ machine Debtors hope to sell, making any potential production of material competing with Kimberly-Clark's at least 18 months away.

This Court has already taken the adequate protective measure of requiring the Debtors to give the Court notice in the event of any such sale.

The District Court Case involves claims of trade secret misappropriation and patent infringement involving complex technology. As such, discovery in that case involved the exchange of many thousands of documents, many of them highly technical, and the testimony of multiple experts and lay witnesses, over the course of nearly three years.

Because of the sensitive nature of the information exchanged in the District Court Case, even the individual defendants and principals of Debtors were excluded from the narrow group of individuals permitted access to the most confidential information exchanged in discovery. Only their lawyers—the lawyers from Barnes & Thornburg—and the Debtors' experts and consultants, were allowed to have it. [Dist. Ct. Doc. 83.]

The result of this strict limitation on the dissemination of information is that the Debtors and their principals do not have full knowledge of even the allegations against them. They are not privy to what trade secrets Kimberly-Clark has accused them of misappropriating. Only their lawyers are—and those lawyers have now withdrawn based on nonpayment.

Barnes & Thornburg withdrew from its representation in the District Court Case fourteen days after the close of expert discovery, just weeks from the deadline for the parties to file dispositive motions in the case.  [Dist. Ct. Doc. 386, 390.]  Barnes & Thornburg did not reveal the reason for its withdrawal in the filings in the District Court Case, but it is Debtors' largest creditor here. Experts and consultants hired by Debtors to assist with the District Court Case are also creditors to whom Debtors owe outstanding fees.

As Kimberly-Clark recognizes in the Dismissal Motion, the District Court set a deadline for the Debtors to obtain replacement counsel because "no corporation, company or organization can represent itself" and that "[f]ailure to comply with this rule could result in a default judgment against the Extrusion Group entities." (Dismissal Motion p. 11). Unable to afford replacement counsel and faced with the prospect of an imminent default judgment in a case they believe they can win, the Debtors had no choice but to file for chapter 11 protection and reorganize.

## ARGUMENT AND CITATION TO AUTHORITY

### A.  Dismissal is not in the best interests of creditors or the Debtors' estates.

Cause does not exist for dismissal of these chapter 11 cases, which is not in the best interests of creditors or the Debtors' estates, particularly given the unusual circumstances present here.  In evaluating the existence of cause for dismissal, the Court should remain cognizant of the two recognized policies of chapter 11 reorganization: "preserving going concerns and maximizing property available to satisfy creditors." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 453, 119 S. Ct. 1411, 1421 (1999).  Dismissal of these cases would thwart both of these goals, which is of course what Kimberly-Clark wants; but what it does ***not*** want is for the Debtors to remain in business or be able to pay its creditors (most notably the Debtors'

attorneys who were defending them against Kimberly-Clark's litigation onslaught and other necessary experts and advisors).

Section 1112(b)(1) of the Bankruptcy Code provides that a chapter 11 case can only be dismissed "for cause," twice reiterating for emphasis that the guiding principle should be what "is in the ***best interests of creditors and the estate***." 11 U.S.C. § 1112(b)(1) (emphasis added).  The statute goes on to provide that dismissal is ***also*** inappropriate where "unusual circumstances" exist, where there is a reasonable likelihood of plan confirmation in a reasonable time, and there is a reasonable justification for any "cause" shown which can be cured in a reasonable time. 11 U.S.C. § 1112(b)(2).

Dismissal of these chapter 11 cases would certainly not be in the best interests of creditors here, as it would likely result in Kimberly-Clark obtaining a default judgment against the Debtors, which would likely put them out of business and make it impossible for them to pay their creditors, as a default judgment in favor of Kimberly-Clark with no automatic stay in place would enable it to obtain a massive judicial lien that would ensure that no other creditors receive anything.

1. **No cause exists to dismiss these Chapter 11 Cases pursuant to Section 1112(b) of the Bankruptcy Code.**

Cause for dismissal does not exist. With respect to what constitutes "cause" for dismissal, the Bankruptcy Code provides a list of sixteen possibilities. 11 U.S.C. § 1112(b)(4). Kimberly-Clark does not show any of these statutory examples of cause.  Instead, it argues that these cases should be dismissed because the Debtors filed them in "bad faith."  In reality, the party operating in bad faith is Kimberly-Clark, seeking to use its virtually unlimited resources to crush its competition and obtain or maintain an improper monopoly in a perversion of the justice system where they would obtain a default judgment against the Debtors solely due the Debtors' lack of funds to pay attorneys to defend them.

Courts have recognized that "the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re Eclair Bakery, Ltd*., 255 B.R. 121, 138 (Bankr. S.D.N.Y. 2000) (citation omitted).  Although there is no precise test for determining bad faith, courts have recognized factors which show an "intent to abuse the judicial process and the purposes of the reorganization provisions." *In re Dixie Broad., Inc*., 871 F.2d 1023, 1027 (11th Cir. 1989) (citation omitted). How ironic here that Kimberly-Clark is seeking to abuse the judicial process by outspending the competition into destruction and depriving the Debtors of an opportunity to reorganize.

To the contrary, the Debtors have no intent to abuse any judicial process—they ***want*** the judicial process to proceed as it should: with adversaries adequately represented and justice being dispensed based on the merits of the case. Similarly, the Debtors are in chapter 11 because they ***want*** to develop a plan for paying their creditors—most notably their attorneys—and to reorganize and preserve the going concern value of their businesses.

The Debtors filed these cases in good faith. Principles common to all cases finding that Chapter 11 has been filed in good faith pursuant to 11 U.S.C. § 1112(b) are (1) the debtor must owe real "legitimate" debts to "real creditors" constituting an "unsecured creditor body;" (2) an established "ongoing business" exists consisting of more than "vague plan for development of sole asset;" (3) a relationship must exist between chapter 11 petition and "reorganization-related purpose" of that chapter. *In re Harvey Probber, Inc*., 44 B.R. 647 (Bankr. D. Mass. 1984).

First, the Debtors have legitimate debts owed to real creditors. As Kimberly-Clark itself recognizes, the Debtors have fourteen (14) creditors. (Dismissal Motion at p. 18). But for some reason, Kimberly-Clark does not think most of these should count.  It is difficult to follow that logic. Apparently, Kimberly-Clark does not believe that attorneys are legitimate creditors with a

-10-

right to get paid. The Debtors respectfully disagree. The Debtor's former counsel withdrew from the District Court Case due to nonpayment, so yes, they have received pressure from creditors.

Kimberly-Clark's assertion that these cases involve a two-party dispute is simply not accurate. The Debtors are not seeking to "resolve a two-party dispute" in the bankruptcy court. (*See* Dismissal Motion pp. 14–15). There are multiple other creditors, and in fact the Debtors do not seek to resolve their dispute with Kimberly-Clark in the bankruptcy court at all.

Second, the Debtors have a real ongoing business. They are currently engaged in consulting and brokering operations and are in advanced stages of a major equipment sale that would provide millions of dollars in revenue. Kimberly-Clark emphasizes that the Debtors have few employees (conveniently ignoring the four principals who have not taken a salary since early this year) as if that were a key factor in the dismissal analysis. If companies with few employees were not eligible for chapter 11, the vast majority of small businesses would be excluded (despite whole sections of the Bankruptcy Code dealing with small businesses) and single asset real estate cases would not exist (despite specific Bankruptcy Code provisions applying to them).

Third, the reorganization-related purpose here is to enable the Debtors to pay their debts and assure representation in order to ultimately prevail in the District Court Case. Ironically, Kimberly-Clark accuses the Debtors of filing these cases as a "litigation tactic" to deprive it of its day in court. To the contrary, the Debtors very much want to have their day in court, and it is Kimberly-Clark wishing to deprive them of that by rushing to a default judgment before they have a chance to reorganize.

### 2. Dismissal of the Debtors' Chapter 11 Cases is not in the best interests of creditors due to the unusual circumstances present in these cases.

Unusual circumstances make dismissal of these cases inappropriate. Even if cause is shown for dismissal, Section 1112(b)(2) provides that a court may not dismiss a chapter 11 case if the

court finds unusual circumstances establishing that dismissing the case is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(2). Additionally, the court should find that there is a reasonable like likelihood that a plan will be confirmed within a reasonable period of time[3] and the grounds for conversion or dismissal (if established) are reasonably justified and can be cured in a reasonable period of time. *Id*.

These chapter 11 cases are highly unusual. "Although a finding of unusual circumstances is within the court's discretion, the word 'unusual' contemplates facts that are not common to chapter 11 cases generally." *In re Triumph Christian Ctr., Inc*., 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013) (citation omitted)). "A determination of the existence of 'unusual circumstances' is necessarily fact intensive." *Id*.

Perhaps the most unusual aspect of these cases is that the Debtors were forced to incur about ***$7 million in legal fees*** defending themselves against Kimberly-Clark, about $4 million of which were actually paid and about $3 million of which are outstanding. Notably, the Debtors' counsel took a huge risk staying in the case while unpaid legal fees continued to mount, which they no doubt did because of their belief that the District Court Case was very winnable.  Judge Thrash seemed to agree when he denied Kimberly-Clarks TRO motion, finding that it had not established a likelihood to prevail on the merits.

Further, there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time. These chapter 11 cases have been pending for less than two months. The Debtors' initial exclusive period for filing a plan is nearly two more months away (if not extended). The Debtors just filed their schedules and the 341 meeting of creditors occurred about a month ago. At

---

[3] These are not small business cases, so the time frames established in sections 1121(e) and 1129(e) of this title do not apply.

the 341 meeting, the Debtors' representative indicated that the Debtors anticipated receiving additional funding within just a few months that should enable them to reorganize.

The Debtors need not show at this stage that confirmation of a plan of reorganization is a certainty; just that it is within the realistic realm of possibilities. *In re Ramreddy, Inc*., 440 B.R. 103, 114 (Bankr. E.D. Pa. 2009) ("A debtor facing a motion under § 1112(b) must still show that a reorganization is plausible and not 'a mere financial pipe dream.'"). "The standard in § 1112(b)(2)(A) is lower than the confirmation standard in § 1129." *In re Delta AG Grp., LLC*, 596 B.R. 186, 198 (Bankr. W.D. La. 2019). "Section 1112(b)(2)(A) only requires that there be a reasonable likelihood that a plan will be confirmed." *Id*. "It is not a confirmation hearing." *Id*. "It is an evaluation of the likelihood of achieving confirmation." *Id*.

Plan confirmation here is more than just a pipe dream. The Debtors' businesses have been successful for years, struggling only due to its legal fees caused by Kimberly-Clark. Their affiliate has over $120 million in funding commitments and is well on its way to solidifying this funding, some of which will be paid to the Debtors to purchase equipment, and leading to millions of dollars of revenue, some of which may be used to effectuation a reorganization plan.

Moreover, any "cause" for dismissal is justified and can be cured in a reasonable time. The Debtors do not expect to postpone the District Court Case forever. They simply need a reasonably amount of time to reorganize and have counsel in place to mount a defense.

In the Dismissal Motion, Kimberly-Clark cites several cases that are easily distinguishable:

- *In re Asanda Air II LLC*, 600 B.R. 714 (Bankr. N.D. Ga. 2019).  This case involves a debtor failing to comply with a court order granting a 2004 examination. This was an important basis for the court's decision to dismiss the case and makes up the bulk of the court's analysis. The court also highlights the failure of the debtor to make important disclosures to the court in its schedules and other misrepresentations in its pleadings. Lastly, the court finds that the case can be dismissed based on improper venue. In sum, this case is easily distinguishable.

-13-

- *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984).  Unique facts in this case make it easily distinguishable as well. The Debtor was a recipient of a property that was subject to imminent foreclosure from a defaulting borrower. The Debtor had no realistic prospect of reorganization, and the case was filed on the eve of the foreclosure.

- *In re Serfass*, 325 B.R. 901 (Bankr. M.D. Fla. 2005). This case is cited frequently throughout Kimberly-Clark's bad faith argument. This case deals with an individual chapter 11 debtor embroiled in litigation with family members. The debtor filed a motion to dismiss his case to dodge a 2004 examination motion filed by the family members. The debtor was unemployed and was not engaged in any business.

- *In re HBA E., Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988). This case involved an entity that was never financially solvent or successful. The debtor relied entirely on outside investment to continue operating. Without the investment, the court declared that the debtor had no realistic chance to fund a reorganization.

In sum, Kimberly-Clark has failed to show that these chapter 11 cases were filed in bad faith and have not established grounds for these cases to be dismissed.

**B.  The automatic stay should not be lifted.**

   **i.    Bad faith has not been established as grounds for the automatic stay to be lifted.**

As shown above, Kimberly-Clark cannot establish bad faith or any other basis of "cause" to dismiss these chapter 11 cases. Likewise, Kimberly-Clark fails to establish "cause" to grant them relief from the automatic stay. "The standards for bad faith as evidence of cause, whether in the context of dismissal or relief from the stay are not substantively different from each other." *In re Eclair Bakery, Ltd*., 255 B.R. 121, 138 (Bankr. S.D.N.Y. 2000) (punctuation and citation omitted).

   **ii.   The District Court Case's mere existence does not entitle Kimberly-Clark to stay relief.**

Kimberly-Clark argues that the Court should grant relief from stay for two reasons. First, because this Court does not have jurisdiction and, second, because the District Court Case exists and is pending. (*See* Dismissal Motion pp. 20–27).

The arguments in the Dismissal Motion regarding the fact that the District Court Case should be resolved in the District Court are classic straw man arguments. The Debtors have never argued that the District Court Case should be resolved anywhere other than in the District Court. The only question is **when** that case should move forward. Of course that case should not be stayed forever—just long enough for the Debtors to reorganize and afford lawyers to defend themselves. There is no dispute that the District Court Case needs to resume at some point in the near future. Debtors' counsel are very familiar with removal of cases to bankruptcy court and have no intention of doing so in these cases.

Further, the District Court Case's mere pendency, without more, does not provide a basis for the Court to grant relief from the automatic stay. If that were so, every litigant with pending litigation would be entitled to automatic stay relief, and the Bankruptcy Code provisions applying the automatic stay to "continuation" of litigation would be rendered superfluous. *See* 11 U.S.C. § 362(a)(1).

Instead, Kimberly-Clark must satisfy a three-pronged test, which it cannot do: (1) whether great prejudice to the bankruptcy estate or debtor will result from prosecution of lawsuit, (2) whether hardship to non-debtor by continuation of stay considerably outweighs hardship to debtor, (3) whether the creditor has a probability of success on the merits. *Egwineke v. Robertson (In re Robertson)*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). All three factors weigh in favor of leaving the stay in place.

**Prejudice**. First, the Debtors and their estates will suffer extreme prejudice if the District Court Case is allowed to continue before the Debtors have an opportunity to reorganize. Unable to afford lawyers to defend themselves, they will likely have a default judgment thrust upon them, effectively destroying their businesses and leaving their creditors with nothing.

Despite Kimberly-Clark's assertions that "clearly" being unable to afford a lawyer to defend yourself is "not recognized as sufficient prejudice to preclude lifting of the automatic stay" (Dismissal Motion at pp. 31–32), numerous courts (including in the Eleventh Circuit) have found exactly that. *See, e.g., In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001) (denying stay relief where debtor did "not have any available funds to defend the District Court Action"); *In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928 at *19 (C.D. Cal. 2011) (affirming bankruptcy court denial of stay relief motion where "bankruptcy court found that the high cost of litigating in state court might 'overwhelm' the estate," holding that "the bankruptcy court's findings regarding the high cost of litigation were not clearly erroneous" and that "it was reasonable for the court to conclude that lifting the stay would prejudice other creditors"); *In re Curtis*, 40 B.R. at 807 (Bankr. D. Utah 1984) (denying stay relief because among other reasons distracting the debtor from the reorganization, "not to mention the costs of compliance," and this consideration cannot be shrugged off as *de minimis*").

To the extent that Kimberly Clark advances cases that state the cost of litigation did not constitute prejudice, those cases either involved situations where (1) the party who would be prejudiced by having to incur fees was not the debtor, (2) the debtor made no showing that a stay would save the estate money, or (3) there were doubts as to whether the costs were chargeable to the estate.  None of those factors are present here. The costs would clearly be chargeable to the estate, and comparatively, the cost of litigating exceed the cost of staying the action.

**Hardship**. Further, Kimberly Clark suffers no great prejudice from the maintenance of the stay. Contrary to Kimberly Clark's assertion, the District Court has not found that any of the Debtor's actions constituted unlawful infringement. As the District Court found in its order denying Kimberly-Clark's request for a temporary restraining order, Kimberly-Clark will not

suffer irreparable harm from a delay in the resolution of these cases. [Doc. 40-2, p. 104, ll. 17-20]. To the extent that the District Court might eventually find that Debtors infringed on Kimberly-Clark's intellectual property, monetary damages are available.

In any event, it "is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Landmark Fence Co.*, No. CV 11-00934 AHM, 2011 U.S. Dist. LEXIS 150928, at *23 (C.D. Cal. Dec. 9, 2011). It is almost beyond dispute that the Debtors and their creditors will be devastated if Kimberly-Clark is enabled to obtain a default judgment.

**Success**. Third, Kimberly-Clark has not shown a high probability of success on the merits. The District Court found that Kimberly-Clark had not shown a probability of success on the merits in denying its request for a TRO. [Doc. 40-2, p. 103, ll. 16–20]. "Courts routinely deny stay relief where, as here, a creditor has little to no probability of success on the merits." *In re Jefferson County*, 484 B.R. 427, 468 (Bankr. N.D. Ala. 2012).

### iii.    The *Curtis* factors weigh in favor of *not* lifting the stay.

In the Dismissal Motion, Kimberly-Clark cites to certain "Curtis Factors" cited by various courts in determining whether cause exists to lift the automatic stay. (Dismissal Motion pp. 27–28). None of these factors are determinative, and most favor leaving the stay in place here.

1.    <u>Whether relief would result in partial or complete resolution of the issues.</u> Certainly, if Kimberly-Clark is enabled to swiftly obtain a default judgment, the issues will be completely resolved in Kimberly-Clark's favor in a miscarriage of justice that will destroy the Debtors' ability to reorganize. This factor favors maintaining the stay, as a swift resolution in Kimberly-Clark's favor with no defense would result in injustice and is not in the best interests of creditors, who would receive nothing.

2.      <u>Lack of any connection with or interference with the bankruptcy case</u>. Allowing the

continuance of the District Court Case would basically destroy the Debtors' ability to reorganize.

As the court in *In re Curtis* explained, the most important factor is the "effect of such litigation on

the administration of the estate." 40 B.R. 795, 806 (Bankr. D. Utah 1984). Even when lifting the

stay would not *per se* interfere with the Bankruptcy case, when lifting the stay "significantly

burdens the debtor, without a corresponding benefit to [the] movants," this factor does not weigh

in favor of lifting the stay. *In re Bridge*, 600 B.R. 98, 105 (Bankr. D. N.M. 2019).

3.      <u>Whether the other proceeding involves the debtor as a fiduciary</u>. It does not.

4.      <u>Whether a specialized tribunal with the necessary expertise has been established to</u>
<u>hear the cause of action</u>. No specialized tribunal has been established to hear the cause of action.

While Kimberly Clark asserts that an appeal would be heard in the Federal Circuit, the proceeding

is not currently at that stage.

5.      <u>Whether the debtor's insurer has assumed full responsibility for defending it</u>. No

insurer has assumed any such responsibility.

6.      <u>Whether the action primarily involves third parties</u>. It does not. The Debtors and

their principals are the only defendants.

7.      <u>Whether litigation in another forum would prejudice the interests of other creditors</u>.

It certainly would. Allowing Kimberly-Clark to obtain a default judgment now would likely put

the Debtors out of business, preventing them from confirming a plan and paying their creditors,

and Kimberly-Clark's judgment lien would prevent other creditors from receiving anything.

8.      <u>Whether the judgment claim arising from the other action is subject to equitable</u>
<u>subordination</u>.  Kimberly-Clark's conduct and actions that prejudice the estate's creditors very

well may subject any claim it may have to equitable subordination.

9.     <u>Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor</u>. It is currently unclear whether this factor applies.

10.    <u>The interests of judicial economy and the expeditious and economical resolution of litigation</u>. Certainly, enabling Kimberly-Clark to obtain a default judgment would be an expeditious and economical resolution that would have no relation to whether it can actually win on the merits, contrary to any notions of justice.

11.    <u>Whether the parties are ready for trial in the other proceeding</u>. The Debtors are decidedly ***not*** ready for trial, currently unable to afford counsel. The Debtors lack counsel, and as entities, cannot appear *pro se*. Thus, a trial cannot occur.

12.    <u>Impact of the stay on the parties and the balance of harms</u>. As explained above, lifting the stay would likely be catastrophic to the Debtors, while leaving the stay in place would result in no real harm to Kimberly-Clark. Contrary to its assertions, no infringement has been proven at this stage, and if such infringement is ever proven, monetary damages are available. The balance of the harms weighs in favor of maintaining the stay. Unlike the plaintiff in *Voice Systems & Services, Inc. v. VMX, Inc.*, 1992 WL 510121 (N.D. Okla. 1992), Kimberly Clark has not proven any infringement, and the District Court expressly declined to issue a TRO. Any harm that it suffers can be compensated by money damages at a later point in time. Further, the estate will suffer extensive monetary harm if forced to defend this action (recognized as prejudice in *Curtis*, as well as numerous other cases).

In sum, Kimberly-Clark has not established grounds for lifting the automatic stay at this early stage of these chapter 11 cases so that it may obtain a default judgment before the Debtors have an opportunity to reorganize and defend themselves, which would be catastrophic to the Debtors, their estates, and their creditors.

**CONCLUSION**

For the reasons stated above, the Court should deny the Dismissal Motion in its entirety.

Dated: December 3, 2021                    **ROUNTREE LEITMAN & KLEIN, LLC**

                                           /s/ *Benjamin R. Keck*
                                           William A. Rountree, GA Bar No. 616503
                                           Benjamin R. Keck, GA Bar No. 943504
                                           Taner N. Thurman, GA Bar No. 835238
                                           Century Plaza I
                                           2987 Clairmont Road, Suite 350
                                           Atlanta, Georgia 30329
                                           (404) 584-1238
                                           wrountree@rlklawfirm.com
                                           bkeck@rlklawfirm.com
                                           tthurman@rlklawfirm.com
                                           *Attorneys for Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 3, 2021, I filed the foregoing pleading using the Court's

CM/ECF system, which generates electronic notice thereof to all parties registered to receive

notice thereby, including the following:

Nathan T. DeLoatch on behalf of Defendant Kimberly-Clark Corporation
nathan.deloatch@troutman.com

Daniel E. Raskin on behalf of Aero Nonwovens
danieleraskin1@gmail.com;R52148@notify.bestcase.com

James J. Leonard on behalf of Creditor Barnes & Thornburg LLP
jim.leonard@btlaw.com, lisa.mitchum@btlaw.com

Office of the United States Trustee
ustpregion21.at.ecf@usdoj.gov

David S. Weidenbaum on behalf of U.S. Trustee Office of the United States Trustee
david.s.weidenbaum@usdoj.gov


Dated: December 3, 2021          **ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Benjamin R. Keck*
William A. Rountree, GA Bar No. 616503
Benjamin R. Keck, GA Bar No. 943504
Taner N. Thurman, GA Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Attorneys for Debtors*